C. B. SIMMONS,

*Plaintiff and Respondent,*

vs.

R. G. PARRENT,

*Defendant and Appellant.*

(No. 2576; April 21st, 1953; 256 Pac. (2d) 101)

For the defendant and appellant the cause was submitted upon the brief of Mahoney and Wilkerson of Casper, Wyoming, and oral argument by Mr. J. F. Mahoney.

For the plaintiff and respondent the cause was submitted upon the brief of Maurer and Garst of Douglas, Wyoming, and oral argument by Mr. Joseph Garst.

## OPINION

BLUME, Chief Justice.

The Rock Creek Oil Company, sometimes mentioned as the oil company, was a Montana corporation and never domesticated in this state. It drilled one oil well, and no more, in Weston County, Wyoming, which well proved to be unproductive. The oil company engaged the defendant to swab the well. On or about April 18, 1949, Parrent, the defendant, rendered a statement of account to the oil company in the amount of $2,980.25. This account was paid by the oil company. Thereafter Parrent rendered to the oil company another account in the sum of $4,994.65, claiming this additional amount for swabbing the well of the oil company. This additional amount was not paid, and the indebtedness denied. On April 27, 1951, Parrent brought action against the Rock Creek Oil Company asking judgment for $4,994.65 with interest and cost. He caused a writ of attachment to be issued which was levied on the property here in controversy. The defendant did not appear in this action and the court rendered judgment in rem on June 19, 1951, in conformity with the prayer of the petition in that case. Thereafter an execution was issued to sell the property

in controversy pursuant to the judgment. Before the property was sold, the plaintiff Simmons notified Parrent and his attorney that he was the owner of the property and that he had a bill of sale for it dated June 9, 1949. Parrent, however, caused the sheriff to proceed with the sale. A certificate of sale was issued by the sheriff of Weston County, Wyoming, certifying that he had sold the property in controversy on July 10, 1951, to R. G. Parrent for the sum of $5,400. This certificate of sale is dated July 20, 1951. On July 19, 1951, the present action of replevin was brought by the plaintiff Simmons against R. G. Parrent. Plaintiff alleged that on June 9, 1949, he purchased and became owner of the property described as follows: 2-210 bbl. weld storage tanks, complete with runways, steps, all flow lines, valves, Ideco pump jack, all casing, tubing and rods located at the well site of the Newell No. 1 well in the NE¼NW¼NE¼ of Sec. 9, Twp. 44 No., Rge. 62 W. 6th P.M.; that said property is of the value of $5,500; that the defendant on July 10, 1951, wrongfully and without the consent of plaintiff came into possession of said personal property and still retains possession, and he claims to be the owner thereof; that plaintiff has demanded possession of the property but defendant refuses to deliver it to the plaintiff and defendant unlawfully withholds and detains it from plaintiff. The prayer was for the possession of the property or if delivery could not be had, judgment for $5,500.

A writ of replevin was thereafter duly issued, and possession of the property was seized thereunder; Parrent, the defendant, appeared in the action by his attorney. Thereafter and on February 15, 1952, the plaintiff answered admitting that the defendant claimed to be the owner of the property in controversy but denied each and every other allegation in the petition. He also filed what he called an affirmative defense

which in substance alleges as follows: Plaintiff Simmons furnished defendant with a copy of the bill of sale executed July 9, 1949. It was issued without authority of the board of directors. At the time of the purported execution of the bill of sale, the Rock Creek Oil Company was insolvent. No fair consideration was given for the sale. The conveyance and transaction of June 9, 1949, was made and consumated by the Rock Creek Oil Company with intent to hinder, delay, and defraud the defendant, as a creditor of the Rock Creek Oil Company, and the transaction was and is fraudulent as to the defendant Parrent. Defendant also filed a cross petition in which he alleged that he became the purchaser of the property by reason of the sheriff's sale hereinbefore mentioned. Thereafter and on March 1, 1952, the plaintiff Simmons filed a reply denying each and every allegation contained in the affirmative defense and further claimed, by a so-called cross petition, that after the action in this case was commenced, plaintiff by a writ of replevin obtained possession of the property under his claim of title; that defendant took from plaintiff's possession the Ideco pump jack, approximately 300 feet of 2½-inch tubing and approximately 300 feet of 4-inch flow line and appropriated the same to his own use; that the property so taken is of the value of $3,800, and judgment was asked for the value thereof.

The trial of this case was had before the court without a jury. Judgment was rendered in favor of the plaintiff Simmons for the recovery of the property in controversy and for the sum of $250 in lieu of the Ideco pump jack and tubing and line pipe taken from the well site. From that judgment, the defendant Parrent has appealed to this court.

The plaintiff testified that he bought the property in controversy herein on or about June 9, 1949, for the

sum of $8,500; that he took possession thereof by going to the occupant of the surface of the land on which the oil well was drilled and getting permission from him to leave the property at that place. The defendant in his testimony contended that he was the owner thereof by reason of the indebtedness claimed by him as already mentioned.

L. W. Carter was a witness for the plaintiff. His testimony is not of great importance except that he testified that the bill of sale given to plaintiff Simmons was executed pursuant to the direction of the board of directors of the Rock Creek Oil Company. The bill of sale was introduced in evidence which shows that it was executed for the Rock Creek Oil Company by L. W. Carter.

A. W. Hartwig also testified in favor of the plaintiff. He was one of the directors of the Rock Creek Oil Company and was in charge of the management of that company in connection with the drilling of the well involved in this case. He testified in substance that there were three directors of the Rock Creek Oil Company and that he was one of them; that he negotiated the sale of the property in question on behalf of the corporation; that he had two offers for the property, one for $7,500, which was not accepted, and one from the plaintiff Simmons for $8,500; that the latter offer was accepted; that Simmons paid cash in the sum of $6,000 and gave a note for $2,500; that while he had not collected the note, he had asked payment thereof, and that he considered the note to be good; that a bill of sale was delivered to Simmons, signed for the Rock Creek Oil Company by L. W. Carter and all of the directors of the corporation authorized the execution thereof; that the $6,000 cash paid by Simmons together with $2,300 contributed by himself and Carter was used to pay the debts of the company; that all

216

debts were paid, including the debt to Parrent, which was in approximately the sum of $3,000; that this sum was paid for swabbing the well; that the average cost for swabbing a well is $1,200 to $1,400, and that Parrent's bill of approximately $3,000 was high, that the corporation did not owe Parrent any further sum, and that his additional claim for $4,994.65, above mentioned, was not an account which was owed by the Rock Creek Oil Company but was in fact owed, if owed at all, by someone else. Hartwig's testimony is of such vital importance in this case that it may be well to set some of it out in detail. He testified on cross-examination: "Q. Are you able to estimate roughly what the company's total debts were at the time of this sale? A. Yes. Q. How much were they? A. A little over $6,000. Q. So they have not all been paid in full? A. Yes, they have. Q. How was that accomplished, with only $6,000 to work with? A. Mr. Carter and myself paid it. Q. You put in some further funds? A. Yes. Q. About how much? A. About $2,300 we made up. Q. Then at the time of the sale the company owed about $8,300 for the drilling of the well, is that right? A. That's right. Q. Does it (the corporation) have any assets other than the Simmons note? A. No sir. Q. Does it owe any money? A. No sir, except to me and Carter. As far as the Rock Creek is concerned they are in the clear. Q. Did the company notify any of its creditors that it was going to sell this property to Mr. Simmons? A. No. They had no need to. We didn't owe anybody. Q. You owed about $8,300, did you not? A. Yes, but we took care of that. Everything was paid off before we sold it. Q. Are you aware that R. G. Parrent of Casper, Wyoming, claims a substantial sum of money from the company for the drilling of that well? A. Yes, I am. Q. Do you dispute the validity of that claim? A. I certainly do. Q. Upon what grounds, Mr. Hartwig? A. Mr. Parrent submitted a bill for $3,000 as his total

bill. That bill was paid by the company with a company check, and I personally signed that check, so I know that it was paid. Q. And then did you afterwards receive a bill from him. A. Yes. Q. Did you reach any agreement with him about it? A. No. I just told him that he was billing us on some other wells that Newell had drilled which had nothing to do with the Rock Creek Oil Company. Q. Were you then satisfied that the work for which he was claiming this sum was not done on the Rock Creek Well in Weston County, Wyoming? A. We paid Parrent for all work he did on the Rock Creek Well, the bill submitted to us, which was $3,000. We paid it. * * * Parrent just swabbed the well, and that's a pretty expensive swabbing job, $3,000 for swabbing the well. At least we thought it was high. Q. Did you have any other offers except that by Mr. Simmons for the purchase of the property at the well? A. Yes. Q. Was his the highest offer? A. Yes. Q. What was the next highest offer? A. $7,500."

On redirect examination he testified as follows: "Q. What about this Parrent claim, Mr. Hartwig, you claim that this was work that was done by Mr. Newell on Mr. Newell's own private account, and had nothing to do with your company at all? A. Well, our supposition is that he drilled a lot of wells in that area. Q. After you had paid Mr. Parrent up, how long was it before you got this bill for some $5,000? A. We didn't get that until probably six months afterwards. Q. Six months? A. Six or seven months. Q. It had nothing to do with your operations at all? A. None whatever."

On recross examination, he testified: "Q. Then you had no knowledge of Parrent's claim for about $5,000 at the time you sold this property to Tiny Simmons? A. No. He had no just claim. He presented us with a bill for $3,000, and we paid it. Q.. Was that paid all in one check? A. Yes * * * I guess the average swabbing

job on a well of that kind runs around $1,200 or $1,400. That is a big bill for a swabbing job. Q. That is all that Mr. Parrent did on the job? A. Yes sir."

1. As hereinbefore mentioned, defendant Parrent claims that the sale made to plaintiff Simmons for the property in controversy was to defraud the company's creditors. The court made a general finding in favor of the plaintiff. It does not appear on what theory the case was decided. The judgment may, however, be affirmed, if sustainable on any legal ground appearing in the record. 5 C.J.S. § 1464, p. 72; Peterson v. Johnson, 46 Wyo. 473, 28 P. (2d) 487, 91 A.L.R. 723. That legal ground clearly appears in the testimony of the witness Hartwig alone which the court had a right to believe, without reference to any other testimony. He testified that he, on behalf of the Rock Creek Oil Company, paid all the debts of that company, and that it conveyed and sold the property to the plaintiff. It is elementary that a conveyance cannot be in fraud of creditors, if there are no creditors to defraud. The only rights which the defendant could have had in the property in controversy herein was as a creditor of the Rock Creek Oil Company. If in fact he was not a creditor, then he caused the property to be levied upon and sold at a sheriff's sale wrongfully. The judgment in rem which he obtained against the oil company was in no way binding on the plaintiff, since the latter was not a party thereto. Thus it is said in 50 C.J.S. § 820, p. 375: "As a general rule the rights of a person who is not a party to a suit, or in privity with a party, are not affected by the judgment or decree rendered therein. As to him the judgment generally is not res judicata; it is not conclusive for or against him and he is not bound, barred, or estopped by it." To the same effect is 30 Am. Jur. § 220, p. 951. We know of no exception which could apply in the case at bar. Hence

the plaintiff was entitled to show that defendant was not a creditor of the Rock Creek Oil Company, and that the levy on the property herein was wrongful. As above noted the witness Hartwig testified that the defendant was not a creditor of that company at the time that defendant attached the property herein and had it sold on execution; that the only claim which defendant had had was for the sum of approximately $3,000 which was paid in full. That sum was paid to defendant for swabbing the o ne and only well of the Rock Creek Oil Company. Hartwig testified that the ordinary cost of swabbing an oil well is from $1,200 to $1,400; and that the amount of $3,000 which the defendant actually charged was high. That testimony was not contradicted. In this case, the defendant's total account is from five to six times as much as the ordinary cost according to the foregoing testimony. That testimony would seem to go far in showing that the second bill for $4,994.65 which the defendant rendered was for swabbing for someone else. As has already been stated, the trial court was authorized to give credence to Hartwig's testimony. According to that testimony defendant was not a creditor of the Rock Creek Oil Company; his attachment and levy on that property was wrongful; he was not an innocent purchaser thereof; he had no claim against it and could not attack the sale to the plaintiff herein.

2. It may be noted that in connection with the reply, plaintiff set up what he called a cross petition. The defendant made a motion to strike that cross petition which was overruled and counsel for defendant claim that this was error. We do not think there is any merit in this connection. The term cross petition was merely a misnomer. It should have been called a supplemental pleading under § 3-1709 W.C.S., 1945. The misnomer was not prejudicial or affected any substantial right.

Bank of Chadron v. Anderson, 6 Wyo. 518, 530, 48 P. 197.

On oral argument counsel for the plaintiff Simmons told us that the trial court announced that it gave judgment to plaintiff for damages in the sum of $2,500; that he personally prepared the written judgment, and by a clerical mistake entered the sum of $250, instead of $2,500, and that the judgment actually entered should have been for $2,500. Thereafter he filed in this court a motion for diminution of the record to make the correction. Counsel has evidently not taken the time to investigate what may or may not be done by and under such a motion. Obviously it is only to make the record in this court correspond to the record in the trial court. See 4 C.J.S. 1586 et seq. Since the record in the trial court shows only a judgment for $250, there is nothing for this court to do on a motion such as is before us. As stated in 4 C.J.S. 1586, note 24: "Of course, an amendment will not be allowed where there is no defect in the record." We might incidentally state that the subject of correction of the judgment below is treated in 49 C.J.S. 447 et seq. and see 4 C.J.S. § 1116, p. 1587, and 49 C.J.S. 473. In 1 Freeman on Judgments, § 168, it is stated: "The power of the court retaining a record to amend it is not impaired by the fact that an appeal has been taken or the cause has otherwise been removed to higher court for review, and the result has been an affirmance of the judgment." See also 5 C.J.S. § 1967, pp. 1514, 1516. We do not however pass on the correctness of the statement. We merely hold that since the uncontradicted record shows that judgment was entered for $250.00, there is nothing upon which the motion for diminution of the record could operate. This court has no power to correct the record, as we have held several times. McDonald vs. Mulkey 29 Wyo. 99, 210 Pac. 940; Hall Oil Company

vs. Barquin, 28 Wyo. 151, 201 Pac. 160 and Wyoming cases cited. If the record is to be corrected, it must be done by the court below. That should be quite obvious in a case in which, as is asserted here, the true judgment rendered below rests in the breast of the trial court.

It follows from what we have said that the judgment of the trial court should be and is affirmed, without prejudice to the right of having the judgment amended by the trial court in so far as the law authorizes and justifies.

Affirmed.

RINER, J., and HARNSBERGER, J., concur.