**David C. RUST, Plaintiff,**

v.

**FIRST NATIONAL BANK OF PINEDALE, Vernon T. Delgado, Chairman of the Board of Directors of the First National Bank of Pinedale, and personally and Individually, Hugh Caton, President of the First National Bank of Pinedale, and personally and Individually, Joseph R. Hicks, Director of the First National Bank of Pinedale, personally and Individually, Harvey Taylor, Director of the First National Bank of Pinedale, personally and Individually, Robert W. Sievers, Director of the First National Bank of Pinedale, personally and Individually, Thomas V. Delgado, Director of the First National Bank of Pinedale, personally and Individually, and John A. Dussault, and United States National Bank of Omaha, Defendants.**

**No. C76–109B.**

United States District Court,
D. Wyoming.

Jan. 24, 1979.

Daniel E. Wilcoxen of Rust & Armenis, Sacramento, Cal., and Brent R. Kunz of Hathaway, Speight & Kunz, Cheyenne, Wyo., for plaintiff.

Gerald R. Mason, Pinedale, Wyo., for defendants Vernon T. Delgado, Hugh Caton, Joseph R. Hicks, Harvey Taylor, Robert W. Sievers, and Thomas V. Delgado.

Ronald L. Brown of Brown, Drew, Apostolos, Barton & Massey, Casper, Wyo., for First Nat. Bank of Pinedale.

James L. Applegate and W. Douglas Hickey of Hirst & Applegate, Cheyenne, Wyo., for defendant John A. Dussault.

Joseph Polack, Omaha, Neb., and J. Kent Rutledge of Lathrop & Uchner, Cheyenne, Wyo., for the defendant United States Bank of Omaha.

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

The above-entitled matter has come before the Court upon the defendants' motions for summary judgment. The defendants primarily rely on the doctrine of collateral estoppel to support their motions, and this Court must therefore determine the applicability of that doctrine to the case at bar.

In *Rust v. Dussault*, Civil No. C76–032B (D.C.Wyo.1978) the Plaintiff David C. Rust brought an action for the damages he sustained as a result of the Defendant Dussault's alleged neglect and mismanagement of the assets of a cattle ranching partnership, which had been entered into by the parties. The Plaintiff also requested an accounting for and a judicial termination of that partnership.

Prior to the time the partnership was formed, the Defendant had become indebted to the First National Bank of Pinedale (Bank of Pinedale) and the United States National Bank of Omaha (Bank of Omaha), on a participation arrangement, for an amount in excess of 1.2 million dollars. The parties thereafter signed a $950,000.00 promissory note with the Bank of Pinedale which transferred a portion of Dussault's personal debt into a liability of the partnership. The $950,000.00 partnership obligation generally was to reflect the value of certain machinery, vehicles, and livestock owned by the Defendant as well as various expenses incurred by Dussault relative to the cattle operation.

A central issue in *Rust v. Dussault, supra*, concerned an accounting of the $950,000.00 note, in order to determine whether that amount accurately portrayed the value of the aforementioned security. The Plaintiff contended that the $950,000.00 sum was excessive and that part of the note should

have continued as the Defendant's individual debt. A special master was appointed to resolve that issue together with the other accounting problems presented in the case. The matter was also fully litigated at trial and the parties submitted extensive proposed findings of fact with regard to the value of the note. The Court ultimately concluded that the partnership's actual liability on the promissory note was approximately $939,000.00. *Rust v. Dussault, supra*, (Court's Finding No. 23). That amount was somewhat higher than the figure reached by the special master, but in explaining this difference the Court observed that the special master did not have the benefit of the testimony adduced at trial prior to making his finding.

The Court also found in the initial case, that the formal partnership agreement resulted from negotiations that were carried on between the partners during the summer and fall of 1974 and which culminated in an oral agreement in early October of that year to form the partnership. *Rust v. Dussault, supra*, (Court's Finding No. 4).

In the matter presently before the Court, the same plaintiff contends, *inter alia*, that the Bank of Pinedale, its directors and president, the Bank of Omaha and John Dussault, as defendants, fraudulently conspired to induce Rust to enter into the partnership and also become liable on the $950,000.00 note. The plaintiff asserts that the original 1.2 million dollars personal obligation of Dussault was grossly undersecured, and that the defendants misrepresented and concealed Dussault's tenuous financial condition in order to obtain the plaintiff's signature on the promissory note and gain additional security for the Dussault debt. The defendants have denied the plaintiff's allegations and the Bank of Pinedale has counterclaimed against the plaintiff and crossclaimed against Dussault for the amount presently due on the partnership note.

The defendants allege in their motions for summary judgment that the collateral estoppel effect of the Court's findings in *Rust v. Dussault* forecloses any cause of

action asserted in this case. On the other hand, the plaintiff contends that the absence of mutuality of parties in this matter precludes the use of the doctrine of collateral estoppel. The plaintiff also alleges that while the requisite mutuality may in fact exist as to the Defendant John A. Dussault, neither he nor any other of the defendants are entitled to summary judgment since the cause of action asserted herein is entirely different from that alleged in *Rust v. Dussault, supra.*

■ The doctrine of collateral estoppel states that a determination, as to particular issues which have actually been litigated, and which are essential to a judgment, is conclusive in subsequent actions in which the same questions arise even though the cause of action may be different. 46 Am. Jur.2d *Judgments* § 397; Restatement of Judgments § 68; 1 B Moore's Federal Practice § 0.441(2). A related principle is the rule of mutuality which requires that "one who invokes the conclusive effect of a judgment must have been either a party or his privy to the suit in which the judgment was rendered." 1 B Moore's Federal Practice § 0.412(1). The mutuality requirement therefore prevents a litigant from asserting the doctrine of collateral estoppel unless he would have been bound by the prior judgment, had it gone the other way. 1 B Moore's Federal Practice § 0.412(1).

■ The mutuality rule has, however, been significantly eroded in recent years, and the modern trend of the law is to abandon the doctrine in order to protect private parties as well as the general public from relitigation of issues that have been decided in a prior proceeding. *See* Annot. 31 ALR 3rd 1044; 46 Am.Jur. *Judgments* §§ 521–523; 1 B Moore's Federal Practice § 0.412(1), *Brown v. DeLayo,* 498 F.2d 1173 (10th Cir. 1974).

The United States Supreme Court in *Blonder-Tongue Laboratories Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971) noted with approval the diminishing importance of the mutuality requirement by stating:

Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or "a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure", *Kerotest Mfg. Co. v. C–O–Two Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952). Although neither judges, the parties nor the adversary system performs perfectly in all cases, the requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard.

See also, *Parklane Hosiery Company, Inc. v. Shore,* —— U.S. ——, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Similarly in *Brown v. DeLayo, supra,* at 1176, the Tenth Circuit Court of Appeals held that:

The application of collateral estoppel in federal courts is not grounded upon "mechanical requirements of mutuality" . . The test is whether a litigant has had a "full and fair opportunity for judicial resolution of the issue."

This Court in an unreported decision has also rejected the necessity of mutuality of parties. *Thran v. Greyhound Lines Inc.,* Civil 5814 (D.C.Wyo.1974).

■ In diversity actions, such as the instant case, this Court is obligated to follow the law of Wyoming, which, the plaintiff asserts, still adheres to the rule of mutuality. We disagree. While it is true that the Wyoming Supreme Court has made several broad statements which may appear to recognize the principles of mutuality, *Bard Ranch Company v. Weber,* 557 P.2d 722, 727 (Wyo.1976), the continuing validity of the doctrine has not recently been before the Court for determination. The plaintiff's reliance on *Simmons v. Parrent,* 71 Wyo. 207, 256 P.2d 101 (1953) and *Wight v. Chandler,* 264 F.2d 249 (10th Cir. 1957) to support his position is misplaced. The *Simmons* case was decided twenty-five years ago and is certainly not representative of the law of mutuality as it now stands. The *Wight*

decision is in direct conflict with the Tenth Circuit's subsequent holding *Brown v. De-Layo, supra.*

The Wyoming Supreme Court in *Rubeling v. Rubeling,* 406 P.2d 283, 284 (Wyo. 1965) stated:

> The doctrine of res judicata is a rule of universal law pervading every well regulated system of jurisprudence. The doctrine arises through public policy and necessity, it being the intent of the state that there should be an end to litigation. Also the doctrine arises from a need to prevent hardship on the individual and to prevent his being vexed twice for the same cause.

*See also, Adams v. KVWO, Inc.,* 570 P.2d 458, 461 (Wyo.1977); *In Re Estate of Stevenson,* 445 P.2d 753, 756 (Wyo.1968).

It is inconceivable that the Supreme Court of this state could so unequivocally approve of the policies which favor a rule for non-mutuality and yet, at the same time, adopt the opposite doctrine, particularly in light of the United States Supreme Court's pronouncements in *Blonder-Tongue,* and *Parklane Hosiery,* the near universal trend toward abrogation of the mutuality requirement, and the extremely sound reasoning advanced in support thereof.

█ It is therefore the opinion of this Court that Wyoming would generally follow the guidelines set forth in *Peffer v. Bennett,* 523 F.2d 1323 (10th Cir. 1975). In that case, the Tenth Circuit Court of Appeals, citing Colorado law, enumerated the following questions, which must be answered in the affirmative, to overcome the rule of mutuality and establish the right to invoke the doctrine of collateral estoppel:

(1) Was the issue decided in the prior adjudication identical with the one presented in the action in question?

(2) Was there a final judgment on the merits?

(3) Was the party against whom the plea is asserted a party or in privity to a party to the prior adjudication?

(4) Did the party against whom the plea is asserted have a full and fair opportunity to litigate the issues in the prior adjudication?

Similar guidelines were delineated by Justice Traynor in *Bernhard v. Bank of America Nat. Trust & Savings Association,* 19 Cal.2d 807, 122 P.2d 892 (1942), which is recognized as the forerunner of the non-mutuality decisions. *Blonder-Tongue Laboratories v. University of Illinois Foundation, supra.* One additional requirement of the non-mutuality rule would mandate that the issue conclusively determined in the initial action be essential to that judgment. *See* 46 Am.Jur.2d *Judgments* § 423; 1 B Moore's Federal Practice, § 0.443(1); Annot. 31 A.L.R.3rd 1044.

The questions posed in *Bennett* and *Bernhard* must all be answered in the affirmative with respect to the case at bar. Moreover, there can be no doubt that the findings in the prior adjudication, relative to the proper amount of the promissory note and the negotiations leading up to the partnership, were essential to that suit. In oral argument a question was raised as to the finality of *Rust v. Dussault* since it may yet be appealed, but the fact that the initial proceeding is on appeal does not destroy the finality of that decision. *Kurek v. Pleasure Driveway & Park District of Peoria, Ill.,* 557 F.2d 580 (7th Cir. 1977); *Nixon v. Richey,* 168 U.S.App.D.C. 172, 513 F.2d 430 (1975); 1 B Moore's Federal Practice, § 0.416(1).

The Court would observe that some jurisdictions have not abandoned the doctrine of mutuality where a party attempts an offensive use of collateral estoppel. *Adamson v. Hill,* 202 Kan. 482, 449 P.2d 536 (1969), *See* also: Annot. 31 ALR 3rd 1044. The reasoning articulated in those holdings is persuasive in that the implementation of a former judgment as a sword may be manifestly unfair and may fail to promote the rationale underlying the non-mutuality rule. *Parklane Hosiery Company, Inc. v. Shore, supra.* 1 B Moore's Federal Practice, § 0.412(1); *Berner v. British Commonwealth Pacific Airlines Ltd.,* 346 F.2d 532 (2nd Cir. 1965). Other decisions, however, have permitted not only the defensive but also the offensive application of collateral estoppel, thereby abandoning the require-

ment of mutuality in full. *Zdanok v. Glidden*, 327 F.2d 944 (2nd Cir. 1964). *DeWitt v. Hall*, 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967). *See* also, *Parklane Hosiery Company, Inc. v. Shore, supra.*

[5] We need not decide whether a former judgment may be utilized as a sword as well as shield since the issues determined in *Rust v. Dussault, supra*, are asserted in a defensive posture. The plaintiff contends that the Bank of Pinedale's counterclaim may involve an offensive use of collateral estoppel, but that does not require the Court to ignore the findings of fact in the previous matter. It must be remembered that the plaintiff is the party who brought this action and who is now attempting to relitigate several adverse determinations in the initial case, while the defendants are primarily invoking the prior judgment as a shield. The counterclaim, which the plaintiff undoubtedly expected, is simply an outgrowth of the main suit. Therefore, where employment of the doctrine of collateral estoppel is principally defensive, and any offensive use of the prior judgment would be merely tangential to the original cause of action the proper resolution of the problem depends on whether the party against whom the doctrine of collateral estoppel is asserted had a full and fair opportunity and the incentive to vigorously litigate the identical issue in the earlier proceeding. *Parklane Hosiery Company, Inc. v. Shore, supra; Brown v. DeLayo, supra.*

It should also be noted that even under the traditional principles of mutuality this case would probably fall under one of the general exceptions to that rule because of John Dussault's relationship to the other defendants. The plaintiff states at Page two of his complaint:

> That at all times herein mentioned, each of the defendants was the agent and employee and representative of each of the remaining defendants, and in so doing the things hereinafter mentioned was acting within the course and scope of such agency, employment and representation.

■ The principal-agent relationship has long been recognized as an exception to the mutuality requirement. *Bruszewski v. United States*, 181 F.2d 419 (3rd Cir. 1950); 1 B. Moore's Federal Practice, § 0.412(6); Annot.; 31 ALR 3rd 1044. Another apparent exception exists where the liability of a defendant depends on the liability or culpability of one exonerated in a prior suit. *Bigelow v. Old Dominion Copper Mining & Smelting Company*, 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009 (1912).

■ Thus, it is the conclusion of this Court that for the purposes of the case at bar the findings in *Rust v. Dussault, supra*, relative to the proper value of the partnership note and the negotiations which culminated in the oral agreement to form the partnership in October of 1974, are conclusively established and the plaintiff shall be estopped from denying the same. This ruling is not intended to be exhaustive of all matters which may be subject to the doctrine of collateral estoppel, but is only meant to be dispositive of the two subjects which the plaintiff has specifically sought to relitigate by way of his motion for a new trial in the initial proceeding. Other findings, from the first case which comport with the criteria hereinbefore set forth shall not be tried for a second time.

The Court is not, however, convinced that this decision, or any of the arguments advanced in support of their motions, entitled the defendants to summary judgment. While there are many similarities in the two cases, it would appear that the causes of actions are essentially different; it is therefore

ORDERED that the defendants' motions for summary judgment be, and the same hereby are, denied; it is further

ORDERED that for the purposes of the above-entitled matter the following findings of fact or portions of said findings from the case of *David C. Rust v. John A. Dussault*, Civil Action No. C76–032, are conclusively established and the plaintiff is collaterally estopped from denying the same:

(1) *Court's Finding of Fact No. 4*: The partnership agreement resulted from negotiations between the parties during the summer and fall of 1974

which culminated in an oral agreement in the first week of October 1974 to form a general partnership.

(2) *Court's Finding of Fact No. 23*: The bank note of November 26, 1974 was for $950,000.00. The proper amount of the note should have been $939,-827.82 . . . The difference of $10,172.15 was not a partnership debt.

IT IS FURTHER ORDERED that in accordance with 28 U.S.C. § 1292(b), it is the opinion of the Court that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation;

IT IS FURTHER ORDERED that all proceedings in the above-entitled matter are hereby stayed pending any appeal in *David C. Rust v. John A. Dussault*, Civil Action No. C76-032, now pending before this Court or pending an appeal of this decision herein as previously provided.