R. L. MOONEY, Sr.

v.

**FIBREBOARD CORPORATION et al.**

Civil A. No. B–78–223–CA.

United States District Court,
E. D. Texas, Beaumont Division.

Jan. 14, 1980.

Marlin Thompson, Stephenson, Thompson & Dies, Orange, Tex., for plaintiff.

George A. Weller, Weller, Wheelus & Green, Beaumont, Tex., for Fibreboard Paper Products Corp.

John G. Bissell, Strong, Pipkin, Nelson, Parker & Bissell, Beaumont, Tex., for Johns-Manville Products Corp.

Gregory Neill Jones, Stephen C. Dillard, Fulbright & Jaworski, Houston, Tex., for Owens-Corning Fibreglas Corp.

Frank M. Bean, Bean & Manning, Houston, Tex., for Eagle-Picher Industries, Inc.

Gordon R. Pate, Beaumont, Tex., for Pittsburgh Corning Corp.

Gerald P. Coley, Vinson & Elkins, Houston, Tex., for Unarco Industries, Inc.

Lipscomb Norvell, Jr., Benckenstein & Norvell, Beaumont, Tex., for Philip Carey Corp. (now Celotex).

John G. Tucker, Orgain, Bell & Tucker, Beaumont, Tex., for Rubberoid Corp.—A Division of GAF Corp.

John H. Boswell, B. Stephen Rice, Boswell, O'Toole, Davis & Pickering, Houston, Tex., for Armstrong Cork Co.

James W. Mehaffy, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for Standard Asbestos Mfg. & Insulating Co.

Dale Dowell, Reinstra, Reinstra & Dowell, Beaumont, Tex., for Nicolet Industries, Inc.

## OPINION AND ORDER

JOE J. FISHER, Chief Judge.

This is an asbestosis case; at issue is collateral estoppel.

During the years from 1940 to 1970, the plaintiff, R. L. Mooney, Sr., was employed as an insulator. As part of his job as an insulator he handled large quantities of insulating materials containing asbestos dust and fibers. Mr. Mooney now believes that as a result of his former employment as an insulator and consequent exposure to asbestos he has sustained serious injuries to his lungs and respiratory system, tires easily, coughs, suffers from shortness of breath and loss of sleep, and is forced to endure excruciating pain.

As a consequence of these injuries and their relation to his long-term exposure to asbestos, Mr. Mooney has brought suit in this Court against eleven corporations each allegedly either a manufacturer, seller, or distributor of insulation products containing asbestos. Mr. Mooney's action is predicated upon a theory of strict tort liability. Under this approach,

One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

Restatement (Second) of Torts § 402A(1) (1965). *Borel v. Fibreboard,* 493 F.2d 1076, 1087 (5th Cir. 1973). In order for Mr. Mooney to establish his cause of action he must prove that:

1) the defendants manufactured, marketed, sold, or distributed asbestos insulation products,

2) the asbestos products as manufactured, marketed, sold, or distributed were defective and unreasonably dangerous,

3) he was exposed to any of the defendants' asbestos products,

4) his exposure to any of the defendants' asbestos products was sufficient to be a producing cause of certain lung diseases, including asbestosis and mesothelioma,

5) he has or had asbestosis or mesothelioma, and

6) he suffered damages.

In order to avoid proving element number "2" of his cause of action, the plaintiff has moved for partial summary judgment. See Fed.R.Civ.P. 56. As grounds for his motion, he argues that six of the corporations ("Six") he has brought suit against, Pittsburgh Corning Corporation, Armstrong Cork Company, Philip Carey Corporation (now Celotex), Rubberoid Corporation—A Division of GAF Corporation, Johns-Manville Products Corporation, and Fibreboard Paper Products Corporation, were parties to *Borel v. Fibreboard,* 493 F.2d 1076 (5th Cir. 1973), an action in which the United States Court of Appeals for the Fifth Circuit affirmed a federal diversity judgment upon a jury finding that asbestos products as manufactured, marketed, sold, or distributed were unreasonably dangerous and defective within the meaning of section 402A of the Restatement (Second) of Torts, and are thereby precluded from relitigating that issue in the present action. He further argues that four other corporations ("Four"), Owens-Corning Fibreglas Corporation, Standard Asbestosis Manufacturing & Insulating Company, Unarco Industries, Inc., and Eagle-Picher Industries, all of whom were named defendants but settled with the plaintiff prior to a judgment on the merits in *Borel,* are also precluded from relitigating whether asbestos products as manufactured, marketed, sold, or distributed are defective and unreasonably dangerous due to the identity of interest of each of these Four defendants and the Six defendants who were parties to the judgment in *Borel.* Lastly, Mr. Mooney argues that another defendant, Nicolet Industries, Inc., a

defendant in this action who was not named as a party in *Borel,* should also be precluded from relitigating whether asbestos products as manufactured, marketed, sold or distributed are defective and unreasonably dangerous since this defendant shares an identity of interest with the Six defendants who were parties to the judgment in *Borel.*

## I

As this action is brought within the diversity jurisdiction of the Court, there is at the outset the question of the applicable law. *Erie R. R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Several of the defendants have argued in this case that the state law on collateral estoppel must be applied in federal court when deciding an action based on diversity of citizenship jurisdiction.

## A

This Court does not agree. Although there is authority in this Circuit for the proposition that "[b]ecause this is a diversity case, the law of the state where the District Court [sits] controls questions of res judicata and estoppel." *Breeland v. Security Ins. Co.,* 421 F.2d 918, 921 (5th Cir. 1969) (citing cases); see also *Maher v. City of New Orleans,* 516 F.2d 1051 (5th Cir. 1975) (dictum). Seldom, however, do such simple statements supply satisfying solutions in every case in which issues of collateral estoppel arise. In *Breeland,* the precise question before the court was whether a prior federal criminal conviction for fraud was conclusive of a fraud issue in a civil suit brought under diversity of citizenship. The Fifth Circuit thought that the law of the situs of the district court, Louisiana, applied and, after a detailed examination of the Louisiana law of collateral estoppel proved fruitless, concluded by relying on "modern trend[s]." *Id.* at 921–22.

Indeed, the most cursory examination of the preclusiveness of judgments reveals several possibilities. To be sure, the Supreme Court of the United States has clearly held that state court judgments are res judicata in a subsequent federal pro-

ceeding based upon diversity jurisdiction. *Angel v. Bullington,* 330 U.S. 183, 192, 67 S.Ct. 657, 662, 91 L.Ed. 832 (1947). The most authoritative decision of the Fifth Circuit to discuss this area of the law, *Aerojet-General Corporation v. Askew,* 511 F.2d 710 (5th Cir. 1975), holds that federal law governs whether a prior federal court judgment based on diversity jurisdiction is res judicata in a subsequent case brought under federal question jurisdiction, *id.* at 715. Of course neither *Aerojet-General* nor *Angel* are squarely on point, as each involve res judicata rather than collateral estoppel, and neither explicitly answer whether a prior federal diversity judgment is preclusive of issues raised in a subsequent federal diversity action. Nevertheless, this Court is persuaded that the reasoning underlying those decisions does support a holding that federal law controls whether a prior federal diversity judgment is preclusive of issues raised in a subsequent diversity action and at least one court in the Circuit has so held.

In *Willis v. Fournier,* 418 F.Supp. 265 (M.D.Ga.), *aff'd,* 537 F.2d 1142 (5th Cir. 1976) (table), the plaintiff sought to recover damages for the death of her husband resulting from a collision between the automobile he was driving and a truck being driven by the defendant. Earlier, the plaintiff had brought a federal diversity action against the defendant's employer and the jury had determined as an issue in the case that the driver of the truck, the defendant in the subsequent action, had not been negligent. *Id.* at 265–66. When the defendant driver sought to estop the plaintiff from relitigating the issue of the defendant's negligence, the court agreed and applied principles of federal collateral estoppel over the plaintiff's objection that the law of Georgia controlled. The court quoted from *Aerojet-General:*

The importance of preserving the integrity of federal court judgments cannot be overemphasized—out of respect for the federal courts and for the policy of bringing litigation conclusively to an end. If state courts could eradicate the force and effect of federal court judgments

through supervening interpretations of the state law of res judicata, federal courts would not be a reliable forum for final adjudication of a diversity litigant's claims.

and continued:

The question in the instant case is not one of res judicata since the defendant here was not a party to the previous suit as that rule requires. Nevertheless, the holding of the *Aerojet-General* court is equally applicable to questions of collateral estoppel as well. That doctrine, of course, precludes a party to which it applies from disputing facts which it has already litigated. As such, the rule involves a question of the methods for determining disputed facts which, in a federal court, are to be resolved under federal principles. Moreover, the federal interests in bringing a lawsuit to a close and not diverting resources from consideration of cases brought by parties who have not yet had one day in court require a federal rule suited to those ends.

*Id.* (citations omitted).

Indeed, even assuming that this Court is required to follow the "outcome determinative" test of *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), it can hardly be said that the application of modern notions of issue preclusion "significantly affect[s] the *result* of a litigation [as if] a federal court [were] to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court". *Id.* at 109, 65 S.Ct. at 1470 (emphasis added).

B

However, even if this Court is incorrect in its conclusion that federal law controls the preclusiveness of a prior federal diversity judgment in a subsequent federal diversity action, it is, for the reason expressed in part II, B of this opinion, satisfied that the law of collateral estoppel that would be applied by the courts of Texas is the same as the federal courts apply when determining the preclusiveness of a federal question judgment.

II

By moving in this Court for a partial summary judgment that asbestos products as manufactured, marketed, sold, or distributed by the defendants are defective and unreasonably dangerous within the meaning of section 402A of the Restatement (Second) of Torts and precluding the defendants in this action from relitigating that issue, the plaintiff seeks to invoke the offensive use of collateral estoppel. Simply stated:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Restatement (Second) of Judgments § 68 (Tent. Draft No. 1, 1974).

A party precluded from relitigating an issue with an opposing party . . . is also precluded from doing so with another person unless he lacked full and fair opportunity to litigate the issue in the first action or unless other circumstances justify affording him an opportunity to relitigate the issue. . . .

*Id.* § 88 (Tent. Draft No. 2, 1975). The analysis begins with *Parklane*. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

A

In *Parklane,* a stockholder's class action was brought against the Parklane Hosiery Company and others alleging several violations of the Securities Exchange Act of 1934. Before the action came to trial, the Securities and Exchange Commission filed suit against the same defendants seeking injunctive relief. At issue in each action was whether the proxy statement issued by Parklane Hosiery was materially false and misleading. As things would have it, the SEC's injunctive suit was first brought to judgment, the district court having found the proxy statement materially false and misleading as alleged. After the SEC's in-

junctive suit had culminated in a final judgment, the class members in the first action moved for partial summary judgment that the proxy statements were false and misleading.

When the case reached the Supreme Court of the United States, two arguments were offered against the use of collateral estoppel in the action. First, unlike the defensive use of collateral estoppel, a shield, the offensive use of the doctrine, a sword, would not promote judicial economy as a plaintiff would have every incentive to adopt a "wait and see" approach in the hope that some action by another plaintiff would result in a favorable judgment. *Id.* at 329–30, 99 S.Ct. at 650–651. Second, the possible unfairness to a defendant was advanced. What if the defendant had little or no incentive to defend the first action, or was sued in an inconvenient forum? What if the judgment relied on to estop the defendant was inconsistent with one or more prior judgments in the defendant's favor? *Id.* at 330–31, 99 S.Ct. at 651–652.

> The Supreme Court
> concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied. The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.

*Id.* at 331, 99 S.Ct. at 651–652 (footnote omitted). See also *Starker v. United States,* 602 F.2d 1341, 1349 (9th Cir. 1979).

■ This Court chooses to exercise its discretion in this action because it finds that an asbestosis case, like many other mass torts, see generally *Hart v. American Airlines, Inc.,* 61 Misc.2d 41, 304 N.Y.S.2d 810 (Sup.Ct.N.Y.County 1969), is an appropriate candidate for the offensive use of collateral estoppel. First, the defendants in this action, one of some two thousand or more asbestosis actions pending in the courts, can hardly argue that the plaintiff, a severely ill man, waited until another case had gone to judgment before filing his action so that he could take advantage of any possible prior judgment. The facts clearly show that once the plaintiff knew of his cause of action he filed it. Second, this is not a case where the defendants were sued for small or nominal damages in the prior action. Nor as *Borel* was tried in this Court, may it be argued that this action affords the defendants any procedural advantages unavailable in *Borel.*

■ More troublesome is the claim of the defendants that there have been several asbestosis cases which have gone to judgment in the defendants' favor. The defendants argue that to allow the plaintiff to estop the defendant from relitigating whether asbestos products are defective and unreasonably dangerous when there have been several asbestosis cases decided in their favor is unfair. Of course, for this Court to select a judgment in favor of the defendants and use it to preclude the plaintiff from litigating the issue of whether products containing asbestos are defective and unreasonably dangerous would be a violation of due process since the plaintiff would not have been a party to the prior action. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 327 n.7, 99 S.Ct. 645, 649 n.7, 58 L.Ed.2d 552 (1979) (citing cases).

Be that as it may, this Court believes that the argument of the defendants is flawed. In none of the cases brought to the Court's attention have any of the defendants shown that the determination in *Borel* that asbestos products are defective and unreasonably dangerous is in itself inconsistent with another determination. See Restatement (Second) of Judgments § 88(4) (Tent. Draft No. 2, 1975). All that the defendants have shown this Court is that of the two thousand filed asbestosis cases in this country perhaps a dozen or so have gone to judgment in favor of the defendant and that in these cases the plaintiff evidently failed to prove one or more elements essential to his

cause of action. To follow the defendants reasoning, one frivolous lawsuit would preclude courts from using modern principles of collateral estoppel in cases where an issue has clearly been determined adversely to a defendant in other actions. On balance, the defendants' failure to show that any of the cases which they advance are clearly inconsistent with the determination in *Borel* on the issue of whether asbestos products are dangerous and unreasonably defective, coupled with considerations of judicial economy in deciding mass torts, persuade this Court to rule in favor of the offensive use of collateral estoppel in this action.

### B

Although it is the opinion of the Court that the preclusiveness of a prior federal diversity judgment would be governed by federal law in a subsequent federal diversity action, this Court is also of the opinion that if the issue of the use of offensive collateral estoppel were to be determined by the law of Texas the result would be the same.

■ When a federal court determines state law in an action brought within the court's diversity of citizenship jurisdiction, the

> federal court must heed such guideposts as the state courts have constructed, though where such guides are either nonexistent or inconclusive, the federal court can look to . . . federal decisions or the general weight of authority.
>
> [I]n the absence of state decisions in point the court may look to the Restatement of the Law . . . and may, where appropriate, assume that the state will follow the majority rule.

C. Wright & F. Elliot, *Federal Practice and Procedure* § 8, at 16–22 (Interim Pamphlet 1977) (footnotes omitted).

■ Although it has not faced the precise question, this Court believes that the Supreme Court of Texas would follow the approach of *Parklane* and sanction the offensive use of collateral estoppel in this action. The development of the law of collateral estoppel in Texas has mirrored enlightened thinking elsewhere. Illustrative is the abandonment of the requirement of mutuality. *Compare Kirby Lumber Corp. v. Southern Lumber Co.*, 145 Tex. 151, 196 S.W.2d 387, 389 (1946) ("It is a rule that estoppel must be mutual . . . .") *with Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 362–63 (Tex.1971) (no mention of requirement of mutuality); *Olivarez v. Broadway Hardware, Inc.*, 564 S.W.2d 195, 198 (Tex.Civ.App.—Corpus Christi 1978, no writ) ("the Texas Courts have apparently abandoned the requirement of mutuality"); *and Hardy v. Fleming*, 553 S.W.2d 790, 792–93 (Tex.Civ.App.—El Paso 1977, writ ref'd n. r. e.) ("There is . . . no satisfactory reason for any requirement of mutuality"). See also *Seguros Tepeyac, S. A. v. Jernigan*, 410 F.2d 718, 727 (5th Cir.), *cert. denied*, 396 U.S. 905, 90 S.Ct. 219, 24 L.Ed.2d 181 (1969). And although an examination of Texas precedents by this Court has failed to uncover an example of the offensive use of collateral estoppel, neither has it uncovered a modern case in which its application was denied. On balance then, this Court is persuaded that the Texas courts would continue to adhere to the Restatement of Judgments, see, e. g., *Hammonds v. Holmes*, 559 S.W.2d 345 (Tex.1977); *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361 (Tex.1971); *Olivarez v. Broadway Hardware, Inc.*, 564 S.W.2d 195 (Tex.Civ.App.—Corpus Christi 1978, no writ); *Hardy v. Fleming*, 553 S.W.2d 790 (Tex.Civ.App.—El Paso 1977, writ ref'd n. r. e.), and follow the approach of the Supreme Court of the United States in *Parklane*. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979); Restatement (Second) of Judgments § 88 (Tent. Draft No. 2, 1975). This is clearly the modern trend. See generally *Starker v. United States*, 602 F.2d 1341, 1348 (9th Cir. 1979); *Oldham v. Pritchett*, 599 F.2d 274, 278–79 (8th Cir. 1979); *Rust v. First Nat'l Bank*, 466 F.Supp. 135, 138 (D.Wyo.1979).

### III

■ If, however, this case is not a proper candidate for the use of offensive collateral

estoppel, this Court is of the opinion that the *stare decisis* effect of *Borel* precludes the defendants from relitigating whether asbestos products are defective and unreasonably dangerous within the meaning of section 402A of the Restatement. *Simmons v. Union News Co.*, 341 F.2d 531, 533 (6th Cir. 1965); 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2735, at 666 (1973). Further, this Court also believes that the *Borel* decision may be interpreted as holding as a matter of law that products placed in the stream of commerce containing asbestos are defective for the reason that they are unreasonably dangerous to the consumer or user of the product. *Borel v. Fibreboard*, 493 F.2d 1076 (5th Cir. 1973). Further, this Court holds as a matter of law that asbestos is a producing cause of certain lung diseases, including asbestosis and mesothelioma.

IV

As concerns the Six defendants who litigated in *Borel* and were a party to the judgment, this Court holds that they are precluded (collaterally estopped) from litigating whether their asbestos products as manufactured, marketed, sold, or distributed were defective and unreasonably dangerous. Thus, partial summary judgment is entered in favor of the plaintiff on this issue. Further, this Court finds that essential to the judgment, see Restatement, (Second) of Judgments § 68 (Tent. Draft No. 1, 1974), in *Borel* was the determination that the Six defendants manufactured, marketed, sold, or distributed asbestos insulation products. Accordingly, this Court believes that it is proper to preclude the Six defendants from relitigating that issue in this case and enters summary judgment in favor of the plaintiff. Fed.R.Civ.P. 56(d).

As concerns the Four defendants who were parties to the *Borel* litigation but settled prior to the judgment, this Court believes that summary judgment based on the *Borel* decision is inappropriate because these defendants did not have the "full and fair" opportunity to litigate which due process requires. *Parklane Hosiery Co. v.* *Shore*, 439 U.S. 322, 327 n.7, 332, 99 S.Ct. 645, 649 n.7, 652, 58 L.Ed.2d 552 (1979); Restatement (Second) of Judgments § 88 (Tent. Draft No. 2, 1975). However, rather than pursue the "identity of interest" argument advanced by the plaintiff, this Court chooses to apply collateral estoppel because each of these Four defendants was a party to the final judgment in *Condray v. Fibreboard*, B–76–108–CA (E.D.Tex.1977), a case decided in this Court. In *Condray*, a case which culminated in a federal diversity judgment, each of the Four defendants had a full and fair opportunity to litigate whether it manufactured, marketed, sold, or distributed asbestos insulation products and whether its asbestos products as manufactured, marketed, sold, and distributed were defective and unreasonably dangerous. Because the determination of these issues was essential to the final judgment in *Condray*; this Court believes that it is appropriate to preclude each of the Four defendants from relitigating these issues and enters summary judgment in favor of the plaintiff.

[10] As concerns defendant Nicolet Industries, Inc. ("Nicolet"), a party to the final judgment in neither *Condray* nor *Borel*, this Court believes that the entry of summary judgment based on collateral estoppel is inappropriate. Although the plaintiff argues with some force that Nicolet shares the same "identity of interest" with the other defendants as an asbestos manufacturer and seller, due process considerations militate against a finding that this is enough to establish the requisite "privity" essential for employing collateral estoppel. However, for the reasons expressed in part III of this opinion, this Court believes that the entry of summary judgment against Nicolet on the issue of whether its asbestos products as manufactured, marketed, sold, or distributed were defective and unreasonably dangerous is appropriate and enters summary judgment in favor of the plaintiff. As Nicolet has never had a full and fair opportunity to litigate whether it manufactured, sold, marketed, or distributed asbestos products, summary judgment on this issue is denied the plaintiff.

Accordingly, it appears to the Court that the precise issue of manufacturing, marketing, sale, or distribution of products containing asbestos by the following defendants has been determined by courts of competent jurisdiction as listed herein as an adjudication that said products were defective and unreasonably dangerous under section 402A of the Restatement (Second) of Torts (1965):

1) Pittsburgh Corning Corporation, *Borel v. Fibreboard*, 493 F.2d 1076 (5th Cir. 1973), affirming jury findings and judgment, (E.D.Tex.1971);

2) Armstrong Cork Company, *Borel v. Fibreboard, supra*;

3) Philip Carey Corporation (now Celotex), *Borel v. Fibreboard, supra*;

4) Rubberoid Corporation—A Division of GAF Corporation, *Borel v. Fibreboard, supra*;

5) Johns-Manville Products Corporation, *Borel v. Fibreboard, supra*;

6) Fibreboard Paper Products Corporation, *Borel v. Fibreboard, supra*;

7) Owens-Corning Fibreglas Corporation, *Condray v. Fibreboard*, B–76–108–CA (E.D.Tex.1977);

8) Standard Asbestos Manufacturing & Insulating Company, *Condray v. Fibreboard, supra*;

9) Unarco Industries, Inc., *Condray v. Fibreboard, supra*;

10) Eagle-Picher Industries, *Condray v. Fibreboard, supra.*

It further appears that the determination of the precise issue in the above listed courts was made on the basis of competent evidence duly submitted, deliberation by juries, and specific jury findings on the precise issue for each respective defendant.

Therefore, it is ORDERED, ADJUDGED, and DECREED that the above listed defendants are hereby precluded from relitigating the issue of whether or not their products which were manufactured, marketed, sold, or distributed by each of said defendants were defective and unreasonably dangerous under the provisions of section 402A of the Restatement (Second) of Torts (1965). It is further ORDERED, ADJUDGED, and DECREED that each and every listed defendant is collaterally estopped from raising said issue in the course of this trial.

The Court further finds and holds as a matter of law that products placed in the stream of commerce containing asbestos are defective for the reason that the same are unreasonably dangerous to the consumer or user of the product. *Borel v. Fibreboard*, 493 F.2d 1076 (5th Cir. 1973).

The Court further finds and hold as a matter of law that asbestos is a competent producing cause of certain lung diseases, including asbestosis and mesothelioma.

Therefore, it is ORDERED, ADJUDGED, and DECREED that the defendant Nicolet Industries, Inc. is precluded from litigating the issue whether or not its products containing asbestos are defective or unreasonably dangerous under the provisions of section 402A of the Restatement (Second) of Torts (1965).

It is further ORDERED, ADJUDGED, and DECREED that the plaintiff is not entitled to and will not submit evidence on the issues of negligence and punitive damages.

It is further ORDERED, ADJUDGED, and DECREED that the defendants are not entitled to and will not present evidence on the "State of the Art" defense, as such evidence is immaterial to the issues remaining to be tried in this cause.

Therefore, it is ORDERED, ADJUDGED, and DECREED that the issues to be tried to a jury in this cause are:

1) Whether defendant Nicolet Industries, Inc. manufactured, marketed, sold, or distributed asbestos products;

2) Whether R. L. Mooney, Sr. was exposed to any of defendants' asbestos products;

3) Whether R. L. Mooney's exposure to any of the defendants' asbestos products was sufficient to be a producing cause of certain lung diseases, including asbestosis and mesothelioma;

4) Whether R. L. Mooney, Sr. has or had asbestosis or mesothelioma;

5) Whether R. L. Mooney, Sr. suffered any damages and, if so, in what amount; and

6) Defendants affirmative defenses, if any.

It is ORDERED, ADJUDGED, and DE-CREED that judicial economy will be served by the submission of any excluded evidence after the jury has retired for deliberation.