# McDonald *v.* Mobile Life Insurance Company.

*Bill in Equity for Foreclosure of Mortgages, Account, &c.*

1. *Conclusiveness of decree in chancery.*—A decree in chancery, like a judgment at law, when rendered on the merits, is final and conclusive, not only as to facts or issues actually decided, but as to all points necessarily involved in the matter adjudicated.

2. *Same.*—Under a bill filed by a married woman, for the purpose of setting aside, as invalid, a mortgage executed by her as a *femme sole*, under authority of a special statute declaring her a free-dealer, a decree dismissing the bill, rendered on a demurrer which went to the whole case, is conclusive as to the validity of the special statute, and estops her from attacking its constitutionality, in a subsequent suit to foreclose the mortgage.

3. *Purchase under judgment or decree afterwards reversed.*—When a party purchases lands under a judgment or decree, whether he be the original plaintiff in the suit, or an assignee of the judgment or decree, he acquires only a defeasible title, liable to be defeated by a subsequent reversal of the judgment or decree ; and this rule obtains, whether the reversal is based on an amendable defect, or on one which is incurable.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. CHARLES TURNER.

The original bill in this case was filed on the 30th October, 1874, by the Mobile Life Insurance Company, a domestic corporation, against Mrs. Cynthia Ann McDonald, the wife of W. J. McDonald, who was described in the bill as " a *femme covert*, made a free-dealer by special act of the General Assembly of Alabama," with several other persons ; and sought an account and foreclosure of several mortgages on town lots in Birmingham, executed by Mrs. McDonald. The complainant's mortgages were three in number, dated the 26th July, 1872, the 30th January, 1873, and the 30th February, 1873, respectively ; each of which was given to secure the payment of a promissory note executed by Mrs. McDonald to the complainant, of even date with the mortgage, and contained a power of sale on default being made in the payment of the secured note.    J. A. Going & Co. were also made defendants to the bill, as the assignees and owners

of another mortgage on the lots, dated the 10th February, 1873, and executed by Mrs. McDonald and her husband to secure the payment of a promissory note due to one W. W. Brown, by whom the note and mortgage were assigned to said Going & Co. ; and several judgment creditors, whose executions had been levied on the lots, were also joined as defendants.   The bill prayed an account and foreclosure of the several mortgages, an adjustment of the equities among all the parties, and a sale of the lots free from incumbrance.    Decrees *pro confesso* were taken against all the defendants ; and the cause being·submitted for final decree, on the bill and exhibits and the decrees *pro confesso*, the chancellor rendered a decree for the complainant, declaring that the amount due to the complainant, as computed and reported by the register in open court, was $2,427, and ordering a sale of the. lands.   From this decree Mrs. McDonald sued out an appeal to this court, and assigned as error, with other matters, the rendition of the decree against her " without any proof that she was or had been relieved of the disabilities of marriage ; " and this court reversed the chancellor's decree, on that ground, and remanded the cause, during the December term, 1876, as shown by the report of the case in 56 Ala. 468-71.

On the 1st March, 1875, before the former appeal was sued out, the register sold the land under the decree, the complainant becoming the purchaser, at the price of $2,035.75 ; and the sale was duly reported to the court, and by it confirmed at the May term, 1875, before said appeal was sued out.   After the reversal of the decree, and the remandment of the cause, the bill was amended, by setting out in full the special statute by which, as it averred, Mrs. McDonald was declared and made a free-dealer.   This statute, which was approved on the 21st December, 1868, was entitled " An act to constitute Susan M. McNair, and others therein named, free-dealers " ; and by its provisions it declared Mrs. McNair, and nine other women therein named (" Cynthia Ann McDonald, of Hale county," among them), to be free-dealers, with power to contract, to sue and be sued, &c., in their own names, as it sole and unmarried.—Session Acts 1868, p. 540.   The amended bill alleged, also, that on the 13*th October*, 1874, (?) when complainant was about advertising said lots for sale under the powers of sale contained in said several mortgages, a bill for injunction was filed by Mrs. McDonald and her husband, seeking to enjoin the sale, and to have the mortgages declared void and inoperative, on account of the invalidity of said special statute declaring her a free-dealer, and because her husband did not join with her

[McDonald v. Mobile Life Insurance Co.]

in the execution of them; and copies of the bill in that
case, the defendant's demurrer and answer thereto, and the
chancellor's decree dismissing the bill, were annexed to the
amended bill as exhibits.

The bill in that case, as shown by the exhibits copied in
the transcript, was filed (not on the 13th October, 1874, but)
on the 17th December, 1873, by Mrs. McDonald and her
husband, and sworn to by the husband. It sets out all the
transactions between the insurance company and Mrs. Mc-
Donald, originating in a loan to her, and subsequent smaller
loans, to secure which the mortgages were given. As to
these mortgages, the bill alleged, "that the only power of
contracting or disposing of property, aside from such power
as is given by the statutes of Alabama governing the sepa-
rate estates of married women, is conferred upon her" [Mrs.
McDonald] "by an act of the General Assembly of Alabama,
approved December 21st, 1868, a copy of which is hereto
attached as an exhibit, and prayed to be taken as a part of
this bill. Wherefore complainants allege, that, inasmuch as
said several notes and mortgages are not executed jointly by
her and her said husband, the said mortgages do not operate
a transfer of any title or interest in or to said lots, and are
invalid for any purpose, and confer no power upon defend-
ant to take possession of said lots, or to sell them for the
satisfaction of the same," &c.; "but, although said mort-
gages are invalid, and confer no power of sale upon the de-
fendants, they cast a cloud on complainants' title to said
lots." The prayer of the bill was, "that said mortgages be
held and declared null and void, and that the same be deliv-
ered up and cancelled"; or, if the mortgages should be held
valid, that a sale under them be postponed until the 26th
July, 1874, in pursuance of an alleged agreement for exten-
sion; and for other and further relief. The insurance company
answered the bill, asserting that the money was loaned, and
the mortgages taken as security for its repayment, on the
faith of said special statute, which Mrs. McDonald and her
husband produced and exhibited as authorizing her to make
such contracts, "and which, as they asserted, was the law of
the land;" and a demurrer to the bill, for want of equity,
for misjoinder of complainants, and because there was an
adequate remedy at law, was incorporated in the answer.
The cause was submitted to the chancellor for decision,
under a written agreement, "that the only question sub-
mitted shall be, whether or not the said mortgages are valid,
having been executed by the said Cynthia Ann without join-
ing her husband with her; in other words, that the cause
shall be submitted upon the bill and answer; and in the

[McDonald v. Mobile Life Insurance Co.]

event of a decree adverse to the complainants, it shall be so framed as to restrain the advertisement of the sale of the property under the mortgage until the 26th July, 1874; and either party shall have the right of appeal to the Supreme Court." The cause being thus submitted, the chancellor held, that the bill was without equity; and he therefore rendered a decree, dissolving the temporary injunction, and dismissing the bill.

The amended bill, after setting out the proceedings had in said other suit, as above stated, alleged that no appeal had ever been taken from the decree dismissing said bill, and said decree was still of force; also, that the complainant (said insurance company) had become the purchaser of the lots, at the register's sale, under the decree of foreclosure which was afterwards reversed by this court on appeal, and had been placed in possession after the confirmation of the sale, and had paid the taxes, and erected valuable improvements. And the bill then added: " And this plaintiff, submitting itself to the jurisdiction of the court, and praying that future litigation may be confined to the money in its hands, holds itself ready to bring said money into court, at the order of the court; but, should the court see fit to set aside said sale, then plaintiff prays that, before doing so, the court will require said Cynthia A. McDonald, who is insolvent, to refund to plaintiff all the moneys which it has expended in the purchase of said lots, and for the taxes, improvements, and repairs thereof;" and for other relief.

Mrs. McDonald and her husband filed a joint demurrer to the bill as amended—1st, for want of equity; 2d, because the amendment was inconsistent with the original bill; 3d, because said special statute does not relieve Mrs. McDonald of the disabilities of coverture; 4th, because said statute is unconstitutional; and for other causes. The chancellor overruled the demurrer, holding that the decree in the former suit was conclusive as to the validity of said statute; and said McDonald and wife declining to plead or answer, decrees pro confesso were entered against them, as had been entered against the other defendants. On final hearing, on the bills original and amended, with the exhibits, and decrees pro confesso, the chancellor rendered a decree for the complainant, confirming the sale by the register, and vesting in the complainant all the right, title and interest, both at law and in equity, of all the parties to the suit, in and to the lots in controversy.

From this decree Mrs. McDonald appeals, and assigns as error the overruling of the demurrer to the bill, the confirmation of the register's sale, and the final decree.

WATTS & SONS, for appellants.

TERRY & LANE, contra.

SOMERVILLE, J.—The bill filed by the appellant, McDonald, on the 17th of December, 1873, in the Chancery Court of Jefferson county, was primarily intended to attack the *validity* of the mortgages executed by her to the appellee, for the foreclosure of which this suit was instituted. This bill was dismissed, on a demurrer being interposed to it, which went to the merits of the whole case, and no appeal was taken from the decree of dismissal. In that suit, it was competent for her to attack the constitutionality of the legislative act, making her a free-dealer. It was a point directly in issue, upon which depended the validity of the mortgages, and it was both material and traversable. It is as true of decrees in chancery, as of judgments at law, when rendered on the merits of a case, that they are final and conclusive, not only as to the facts or issues *actually decided*, but upon all points which were *necessarily* involved in the matter adjudicated.—1 Greenl. Ev. § 528 ; *Hutchinson v. Dearing*, 20 Ala. 798 ; *Chamberlain v. Gaillard*, 26 Ala. 504. Appellant is concluded from raising this question in this case, being estopped by the decree rendered in the former suit, which pronounced upon the validity of the mortgages, and from which she took no appeal.

The chancellor erred, however, in not setting aside the sale of the lots which had been made under his former decree. No motion was necessary for this purpose. When the appellee purchased the property, the title acquired was only a defeasible one, liable to be divested by a subsequent reversal of the decree under which the sale took place. It was the case of a purchase by a party, and no question is presented involving the intervening rights of third parties or strangers. The principle, as stated in Freeman on Executions (§ 347), seems fully sustained by authority : " The party in whose favor a judgment was rendered must, on its reversal, make restitution of all things in his control which he has acquired thereby. If lands have been set off to the plaintiff under execution, or if he has purchased real or personal estate, the defendant, on the reversal of the judgment, becomes entitled to such real or personal property. In other words, the owner of the judgment, whether he be the original plaintiff, or one to whom the judgment has been assigned by such plaintiff, *purchases subject to the risk of losing title by the subsequent* reversal of the judgment."—*Marks v. Cowles*, 61 Ala. 299 ; *Dupuy v. Roebuck*, 7 Ala. 486 ; *Galpin v. Page*, 18

Wall. 374. We believe the better doctrine to be, that this rule obtains, whether the reversal is based on an amendable defect, or one that is incurable by such amendment.

The decree of the chancellor is reversed, and the cause remanded.