# JULY 7, 1937

RIO BRAVO OIL COMPANY ET AL. V. J. M. HEBERT ET AL.*

No. 7230.  Decided May 26, 1937.
Rehearing overruled July 7, 1937.
(106 S. W., 2d Series, 242.)

---

*Writ of certiorari denied, 302 U. S. 759, 82 L. Ed. 260, 395, 58 Sup. Ct. 366.

*J. H. Tallichet,* of Houston, and *C. T. Duff,* of Beaumont, for the Rio Bravo Oil Company, *John E. Green, Jr.,* of Houston, and *Peveril O. Settle,* of Fort Worth,·for Gulf Oil Corporation, *R. E. Seagler,* of Houston, for Humble Oil Company, *John C. Jackson,* of Houston, for Texas Company, *T. L. Foster,* of Dallas, and *Joiner Cartwright,* of Beaumont, for Sun Pipe Line Company, *Lipscomb & Lipscomb,* of Beaumont, and *Walace Hawkins,* of Dallas, for Magnolia Petroleum Company, all relators.

The judgment in the Weed case is conclusive that the partition deed divided the land in the right of way, and that the lots abutting the right of way extended to the center thereof, so that the partitioners no longer owned the right of way in common and having conveyed the abutting lots are not entitled to the oil produced therefrom, or its value. Quellmalz Lbr. & Mfg. Co. v. Briney, 169 Ark. 994, 277 S. W. 25; Harrison v. First Natl. Bank, 224 S. W. 269; Houston Term. Land Co. v. Westergreen, 27 S. W. (2d) 526; Hanrick v. Gurley, 93 Texas 458, 55 S. W. 119.

*H. T. Easterling* and *Geo. E. Holland,* both of Beaumont, for respondents.

The relators, being strangers to the Weed case, may not invoke the action therein of this Court, and having admitted in their petition that no issue involved in the Weed case is presented herein they can not invoke the jurisdiction of this Court by now presenting an issue settled in that case. Morrow v. Corbin, 122 Texas 553, 62 S. W. (2d) 641; Milam v. Bass, 106 Texas 264, 163 S. W. 577; Talley v. Lamar County, 104 Texas 304, 137 S. W. 1125.

MR. JUSTICE SHARP delivered the opinion of the Court.

Relators have filed an application here for a writ of prohibition enjoining respondents from prosecuting two suits, filed in the 58th and 60th District Courts of Texas, on the ground that the alleged claims of the respondents in the two suits were fully and completely adjudicated in the decisions of the Court of Civil Appeals and of this Court in the case of Rio Bravo Oil Company et al. v. Weed et al., 300 S. W. 171; Id., 121 Texas

427, 50 S. W. (2d) 1080, 85 A. L. R. 391. This Court granted a temporary writ of prohibition, restraining respondents from proceeding further in the two suits, pending a decision of this Court upon the merits of the application.

J. M. Hebert, the Jef Chaison heirs, and the Jef Chaison Townsite Company are suing relators in the district court of Jefferson County to recover 1/16 of the oil, or its value, produced from that part of Lots Nos. 3, 5, and 6, in the T. & N. O. Railway Company right of way in the John Douthit Survey, in Jefferson County. There are two suits: one suit, No. 45734, pending in the 58th District Court, in which only Rio Bravo Oil Company and Gulf Production Company are made defendants; and the other suit, No. 47653, in the 60th District Court, in which the Gulf Oil Corporation, the Rio Bravo Oil Company, and the pipe line and purchasing companies are sued.

The Jef Chaison heirs and the Jef Chaison Townsite Company, in Cause No. 45734, are seeking to enforce the terms of the lease they executed on the land in the right of way prior to the institution of the Weed suit, on the theory that the right of way was reserved in the partition deed to be held in common by the partitioners. Hebert and the Jef Chaison Townsite Company, in Cause No. 47653, are suing the Rio Bravo Oil Company, the Gulf Oil Corporation, and the pipe line and purchasing companies, to recover 1/16 of the value of the oil produced on the right of way during the pendency of the Weed suit, on the theory that the abutting Lots Nos. 3, 4, 5, and 6, which they had theretofore conveyed, did not extend to the center of the right of way, but that the title to the land in the right of way remained in Hebert and the Jef Chaison heirs, as tenants in common, and that therefore they are entitled to the oil produced therefrom.

The land involved here is part of a 52-acre tract once owned by Hebert and the Jef Chaison heirs. They subdivided these 52 acres into eight lots, and executed a partition deed, with plat attached, on April 13, 1901, wherein Hebert conveyed to the Chaison heirs Lots Nos. 1, 3, 5, and 7, as their share of the 52 acres; and the Chaisons conveyed to Hebert Lots Nos. 2, 4, 6, and 8, as his share of the 52 acres. Hebert and the Jef Chaison heirs, after the execution of the partition deed, conveyed the abutting Lots Nos. 3, 4, 5, and 6.

Thereafter, on the theory that they had not divided the land in the railroad right of way, Hebert and the Jef Chaison heirs and the Jef Chaison Townsite Company executed a mineral lease to Marrs McLean, covering that part of the John Douthit Survey within the right of way, and Marrs McLean assigned

the lease to the Rio Bravo Oil Company. The Chaisons and the Jef Chaison Townsite Company allege, in Cause No. 45734, that in executing said lease the Jef Chaison Townsite Company was "acting for itself, as well as all of the other plaintiffs herein."

The owners of the abutting Lots Nos. 3, 5, and 6, claiming that Lots Nos. 3, 4, 5, and 6 extended to the center of the right of way, sued the Rio Bravo Oil Company and its lessors to recover the right of way as a part of the abutting lots and to enjoin them from producing oil therefrom. Said suits were as follows:

On July 8, 1926, Gulf Production Company and its lessor Weed sued Rio Bravo Oil Company and its lessors to recover that part of the south one-half of Lot No. 6 in the right of way, and to enjoin them from producing oil therefrom.

On July 21, 1926, Gulf Production Company and its lessors, the Manns and Nearens, sued Rio Bravo Oil Company and its lessors to recover that part of the north one-half of Lot No. 6 in the right of way, and to enjoin them from producing oil therefrom.

On July 23, 1926, Gulf Production Company and its lessor, Oakwood Realty Company, sued Rio Bravo Oil Company and its lessors to recover that part of Lot No. 3 in the right of way, and to enjoin them from producing oil therefrom.

On August 10, 1926, Yount-Lee Oil Company sued Rio Bravo Oil Company and its lessors to recover that part of Lot No. 5 in the right of way, and to enjoin them from producing oil therefrom.

The Weed case involved the title to 43/100 of an acre of land, a part of the 52 acres above described, and a part of the railroad right of way, and all oil produced therefrom. The trial court granted a temporary restraining order, prohibiting the defendants in that suit from producing oil on said tract of land, pending the determination of the issues involved. The plaintiffs in that suit contended that it was the intention of the owners of the 52 acres to partition the entire tract, including the right of way of the railroad company, and that they owned the 43/100 of an acre and the minerals thereunder. On the other side, the defendants in that suit, who are relators here, contended that it was not intended to partition the railroad right of way, and that their mineral lease executed on said right of way gave them the right and title to the minerals thereunder. Thus it was held in the Weed case that the plaintiffs in that suit were entitled to the land and minerals involved therein, and such judgment is conclusive that the partition deed completely

divided the railroad right of way, and that Lots Nos. 3, 4, 5, and 6, abutting on the right of way, extended to the center thereof. For a full statement of the facts and issues presented, and the questions decided, we refer to the two opinions cited above.

The judgment entered by the trial court in the Weed case incorporated an agreement between the parties to that suit, relating to the production of oil, etc. The judgment of the trial court contained, among other things, the following provisions:

"It is therefore the order, judgment and decree of the Court that the plaintiffs * * * do have and recover of and from the defendants * * * the title to and possession of the following described tract of land and premises, subject only to the defendant railroad company's right of way easement for railroad purposes only. (Here follows a description of that part of Lot 6 in the railroad right of way.)

"And all the oil, gas and subsurface minerals in or under said land, for which said plaintiffs * * * shall have their writs of possession, restitution and injunction as prayed for, as an incident and a part of their title to said tract of land and premises.

"It is the further order, judgment and decree of the Court that the plaintiff do have an injunction as prayed for against the defendants, and each of them, their agents and employees, and the said defendants and each of them, their agents and employees are hereby restrained and enjoined perpetually from developing, exploring or producing oil, gas or any other minerals, both metallic and nonmetallic, from said tract of land and/or premises."

Among other things, the agreement made by the parties to the Weed suit contained the following provisions:

"1.

"In order to preserve the interests of all parties hereto, in so far as possible, and to cause as little inconvenience and expense as possible, it is agreed that operations may be continued by the defendants on the property in plaintiffs' petition described, as if no injunction or temporary restraining order had been granted herein, provided that if the final judgment in this cause by the court of last resort acting thereon be that plaintiffs are entitled to a permanent injunction herein, plaintiffs shall be entitled to the oil produced, or the value thereof on the day produced, together with 6% interest from the time of production; * * *

"2.

"In the event the final decree in this cause by the court of last resort passing on the same is that the plaintiffs are not the owners of the minerals in the land described in plaintiffs' pe-

tition, and that they are not entitled to a permanent injunction as therein prayed for, then, in that event, the oil produced by the defendants from said lands during the pendency of this suit shall be the property of the defendants, as their interests may appear.

"3.

"It is further stipulated and agreed that in the event that the minerals involved in this litigation are not decreed on final hearing to be the property of the plaintiffs or that plaintiffs are not entitled to a permanent injunction, that in such event this agreement shall be without prejudice to any rights existing between James F. Weed on the one hand and J. M. Hebert and the Chaison interests, being the individual defendants herein, other than Marrs McLean, on the other."

The judgment of the trial court contained the further provision:

"And it further appearing to the court that the defendants have entered upon said above described property and have drilled wells thereon and produced oil and gas therefrom, which oil, or the proceeds thereof, is now in the possession of the defendants, to be accounted for under the terms of said agreement, and it appearing that said accounting is to be made in the manner provided only after the judgment in this case becomes final by action of the last court action thereon.

"It is further ordered that in the event an appeal is perfected herein, the permanent injunction herein granted shall be suspended pending action of the court of last resort as defined in said agreement; * * *."

Thus it appears that these 52 acres, or parts of same, have been the basis or subject of much litigation. Besides the Weed and other cases, this land also figured in the following reported cases: Yount-Lee Oil Co. et al. v. Federal Crude Oil Co. et al., 92 S. W. (2d) 493; Gulf Production Co. v. Warren, 99 S. W. (2d) 616 (writ refused); Baten v. Campbell, 62 S. W. (2d) 1010.

We will now return to the issues raised in the two cases pending in the trial courts. Relators herein, defendants in the trial courts, in their answer to plaintiffs' petition alleged that Hebert and the Chaisons had conveyed abutting lots; that relators owned said lots; and that said lots extended to the center of the railroad right of way. In order to avoid this contention, Hebert, the Jef Chaison heirs, and the Jef Chaison Townsite Company, in their supplemental petition, allege that "each of said parties in conveying their respective properties" and in "making conveyance of their respective lots" did not convey

any part of the right of way, because under the terms of the partition deed they did not "subdivide or partition said railroad right of way." In their supplemental petition respondents allege that "the allegation contained in plaintiffs'" petitions in the Mann, Oakwood, and Yount-Lee cases "were substantially the same as those contained in the Weed petition." As to Lot No. 3, see Gulf Production Co. v. Warren, 99 S. W. (2d) 616; as to Lot No. 6, see Baten v. Campbell, 62 S. W. (2d) 1010.

The substance of the agreement made in the Weed case, and incorporated in the final judgment therein, has heretofore been described in this opinion. Hebert, the Chaisons, and the Jef Chaison Townsite Company allege in the present cases that "like stipulations and agreements were made in" the Mann, the Oakwood, and the Yount-Lee cases, "hereinbefore referred to."

Relators contend:

1. It was adjudicated in the Weed case that under the partition deed of April 13, 1901, the partitioners divided the entire 52 acres, including the land in the right of way, and that the lots abutting the railroad right of way extended to the center thereof, so that the partitioners no longer owned the land in the right of way in common, and were not entitled to the oil produced therefrom, or its value, and such judgment precludes the respondents from relitigating the same issues with the other parties and privies to said judgment in any other case.

2. The judgment in the Weed case is conclusive on the parties and their privies as to all matters decided or necessarily involved in its adjudication, no matter how the parties were aligned.

3. The pipe line and purchasing companies having come into possession of the oil produced from the land in the right of way during the pendency of the Weed case, and with notice thereof, they are privies to and equally bound by the judgment in that case as if they had been parties to the record.

4. Respondents' contention that they are entitled to the value of the oil produced from the right of way under the terms of operating agreements is foreclosed by the Weed judgment.

5. As the suits in the district court are nothing but an attempt to relitigate rights which have already been adjudicated by this Court in the Weed case, they should be prohibited.

Hebert and the Chaison heirs voluntarily appeared in the Weed case. They filed answers in that case and joined Rio Bravo Oil Company in prosecuting a writ of error to the Supreme Court. 121 Texas 427, 50 S. W. (2d) 1080, 85 A. L. R. 391, 288 U. S. 603, 77 L. Ed. 978, 53 Sup. Ct. 387. They also

appeared in the Mann case, Baten v. Campbell, 62 S. W. (2d) 1010, and in the Oakwood case.

■■ Where parties have had the opportunity of litigating certain issues, and a final judgment is entered in said cause adjudicating those issues, it is not the policy of the law to permit a relitigation of such questions. The rule is now well settled that a judgment on an issue directly involved in a case is conclusive in a second suit between the same parties, although the second suit relates to a different subject matter. It is also equally well settled that an issue of fact necessary for a determination of issues in a prior case, and a judgment entered therein, creates an estoppel by judgment against relitigation of the same issue. Hanrick v. Gurley, 93 Texas 458, 479, 54 S. W. 347, 55 S. W. 119, 56 S. W. 330, and cases cited; Houston Terminal Land Co. v. Westergreen, 119 Texas 204, 27 S. W. (2d) 526.

The case of Hanrick v. Gurley, supra, involved conflicting claims to certain land, and Judge WILLIAMS, speaking for this Court, clearly stated the rule, which is supported by the great weight of authority, in the following language:

"While the cause of action in that case was not the same as that now asserted, the question as to Nicholas Hanrick's right to inherit from Edward was and is directly involved in and common to both cases, and was expressly adjudicated in the former. Although the judgment of the court was, as we formerly held, only a denial of the right to recover the particular land there in controversy, its estoppel is much broader and concludes the parties upon every question which was directly in issue and was passed upon by the court in arriving at its judgment. Cromwell v. Sac County, 94 U. S. 353; Nichols v. Dibrell, 61 Texas 541; Birckhead v. Brown, 5 Sandf. 145; Boyd v. Alabama, 94 U. S. 645; Southern Pac. R. Co. v. United States, 168 U. S. 49; Beloit v. Morgan, 7 Wall. 621; McDonald v. Mobile Insurance Co., 65 Ala. 358; Freeman on Judgments, Secs. 256-259.

"In the case first cited, the difference between the rule as to the effect of a judgment upon the cause of action adjudicated, and that as to the scope of the estoppel upon questions in issue and determined, where they arise in subsequent litigation between the same parties concerning a different cause of action, is thus stated: 'There is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar

to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * * But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' "

The mineral lease which was executed by respondents to Marrs McLean, and by him assigned to the Rio Bravo Oil Company, on the land in the right of way of the railroad company, being the same lease that was considered in the Weed case, provides:

"That the lessee shall deliver the equal one-sixteenth of all oil 'produced and saved upon the premises, the same to be delivered at the well, free of charge, to the lessor, or to his credit in the pipe line to which such wells may be connected.' "

Hebert, the Chaisons, and the Jef Chaison Townsite Company allege in the present cases that the oil so produced was delivered to the pipe line and purchasing companies; that the Gulf Production Company and its lessors and the Yount-Lee Oil Company are asserting some adverse claim to the royalty claimed by Hebert and the Chaisons under said right of way lease; that if the defendants paid said money to the adverse claimants, it was without the consent of Hebert and the Chaisons; and, finally, that "during all the times the purchasing oil companies purchased, took possession of and converted the oil herein referred to," "they held the same without paying therefor promptly as taken for the sole and only reason given by them that adverse claims were being asserted against the same, and plaintiffs had not made an indemnity bond as required by their contract."

■ The pipe line and purchasing companies received the oil produced by the Rio Bravo Oil Company from the right of way during the pendency of the litigation, with full knowledge of the claims asserted therein, and are as bound by the decision of the Supreme Court in the Weed case, that no part of the right of way was reserved under the terms of the partition deed to be held in common by the partitioners, but that said right of way was completely divided and became part of the abutting lots, as if they had been parties to that litigation. Lee v. Salinas, 15 Texas 495; Randall v. Snyder, 64 Texas 350; Morrison v. Cloud, 13 S. W. (2d) 735; Newman v. El Paso, 77 S. W. (2d)

721; Compton v. Rahl, 94 S. W. (2d) 194; Revised Statutes, 1925, Article 7391; 5 Corpus Juris 1320.

■ Hebert and the Chaisons had no title to the land or the oil produced from said land, and under the judgment entered in the Weed case the pipe line and purchasing companies had no right to pay them the value of the oil produced from that part of Lots Nos. 3, 5, and 6 in the right of way. In Randall v. Snyder, 64 Texas 350, it is said:

"One who buys from a party to an action during its pendency * * * is a purchaser pendente lite, and a judgment ultimately rendered will not only affect him with notice of the adverse claim, but will bind him as will it a party to the record." This rule applies to both real and personal property. Southern Rock Island Plow Co. v. Pitluk, 26 Texas Civ. App. 327, 63 S. W. 354, 356; Citizens State Bank v. Alexander, 274 S. W. 184.

■ The title to the railroad right of way embraced within the 52 acres described in the partition deed aforesaid, and to the minerals thereunder, was conclusively settled in the judgment of this Court in the Weed case. That judgment constitutes a bar and an estoppel to the purported claims alleged by respondents in the two causes above described. To permit the respondents to prosecute the two suits mentioned would give them the privilege of relitigating issues previously decided by this Court, and upon which a final judgment has been entered. Furthermore, it would permit them to contend for oil, or its value, when it has been definitely decided that they had no title to the land or to the minerals thereunder; and the prosecution of such suits would interfere with and obstruct the operation and execution of the judgment of this Court in the Weed case. As applied to a case where the issues are settled by judgment, the rule has been clearly stated in the case of Houston Oil Co. of Texas et al. v. Village Mills Co. et al., 123 Texas 253, 71 S. W. (2d) 1087, in the following language:

"Where rights are established by a judgment of this Court, the Court has undoubted power to secure, by any proper writ necessary to the end, the enjoyment of the rights so established. Where a suit is brought in an inferior court, by any of the parties or privies to such judgment, against those in favor of whom the judgment was rendered, or their privies, and the suit directly involves the relitigation of rights established by the judgment, and is of such nature that, if successfully prosecuted, will result in a judgment which will purport the divesting of those rights, the prosecution of such suit will be prohibited as being an interference with the enforcement of the judgment

of this Court." See also Yount-Lee Oil Co. v. Federal Crude Oil Co., 92 S. W. (2d) 493.

It clearly appearing that Causes Nos. 45734 and 47653, above described, constitute attempts on the part of the plaintiffs therein to relitigate the same issues that have been already litigated by the same parties and their privies, and which have been decided by this Court, and that such suits would interfere with the enforcement of the judgment of this Court in the Weed case, it is, therefore, ordered that the respondents be, and they are hereby, prohibited and enjoined from further prosecuting such suits.

Opinion delivered May 26, 1937.

Rehearing overruled July 7, 1937.