Mrs. Lynn W. BONNIWELL, et al., Appellants,

v.

BEECH AIRCRAFT CORPORATION, Appellee.

No. C2745.

Court of Appeals of Texas, Houston (14th Dist.).

March 4, 1982.

W. James Kronzer, Kronzer, Abraham, Watkins, Nichols, Ballard & Friend, John E.

Williams, Jr., Fulbright & Jaworski, L. S. Carsey, Fulbright & Jaworski, Houston, for appellants.

Stanley B. Binion, James L. Reed, Jr., Reynolds, Allen, Cook, Pannill & Hooper, Houston, for appellee.

Before PAUL PRESSLER, MILLER and MORSE, JJ.

PAUL PRESSLER, Justice.

The principal question presented by this appeal is whether a prior judgment, denying a defendant indemnity over and against a co-defendant on a cross-action, is res judicata of an identical cross-action in a suit brought by a different plaintiff, involving the same defendants, so as to support a summary judgment granting the first defendant indemnity over and against the co-defendant. We find the doctrine of res judicata applicable and accordingly affirm.

This litigation stems from a fatal airplane crash occurring shortly after takeoff at an air field in Galveston County, Texas on April 30, 1974. The aircraft was manufactured by appellee, Beech Aircraft Corporation (hereafter Beech), and operated by the commuter carrier, Metroflight, Inc. (hereafter Metro), one of the appellants. Metro had purchased the craft from Shawnee Airlines, Inc. (hereafter Shawnee). Although a named defendant in the two suits significant to this appeal, Shawnee is not a party to this appeal.

Of five lawsuits which resulted from this accident, the two which are here relevant are styled *Wilcox, et al. v. Metroflight, Inc., et al.*, (hereafter referred to as the *Wilcox* case) and *Bonniwell, et al., v. Metroflight, Inc., et al.* (hereafter referred to as the *Bonniwell* case.) This appeal is from a summary judgment entered in favor of Beech and against Metro in the *Bonniwell* case. Although the summary judgment adjudicates rights only as between Metro, Beech, and Shawnee on their respective cross-actions, the Bonniwells are parties to this appeal because, by virtue of a stipulation entered into by them, the summary judgment substantially affects their rights.

This stipulation recognizes the validity of a settlement agreement entered into by the Bonniwells with Metro and also provides that the Bonniwells will be bound by the summary judgment if affirmed on appeal.

In both the *Wilcox* and *Bonniwell* cases the defendants and the causes of action against those defendants were identical. Metro and Shawnee were sued under the theory of negligence and Beech was sued under the theories of strict liability and negligence. The first case to proceed to trial was the *Wilcox* case tried in the 56th District Court of Galveston County, Texas. Prior to trial, the *Wilcox* plaintiffs settled with Metro nonsuiting the carrier on the negligence claims. Metro remained a party because Beech had cross-acted against Metro and Shawnee for indemnity or contribution. Metro had filed a similar cross-action against Beech, but it likewise nonsuited as to Beech prior to jury selection.

Of the sixteen fact findings made in *Wilcox,* the following are relevant here:

(1) Did not find that at the time the aircraft in question was manufactured by Beech Aircraft Corporation, the control lock system in question was defectively designed.

(2) Did not find that Beech Aircraft Corporation was negligent in failing to convey a design change relating to control lock pin position in the control column to the users of the Beech 99 airplane prior to the occasion in question.

(6) That Metroflight, Inc., was, on or about April 30, 1974, acting by and through its pilots, agents or employees, negligent in failing to remove the control lock pin in the Beech 99 aircraft prior to takeoff.

(7) That the negligence of Metroflight, Inc., in failing to remove the control lock pin was a proximate cause of the crash of the Beech 99 aircraft on April 30, 1974.

(8) That Metroflight, Inc., was negligent in permitting the aircraft to be operated with the single control lock pin.

(9) That such negligence was a proximate cause of the injuries sustained by Maxine B. Wilcox, Georgia Whale and David Goldstein.

(10) That Metroflight, Inc., on or about April 30, 1974, acting by and through its pilots, agents or employees, was grossly negligent in failing to remove the control lock pin in the Beech 99 aircraft prior to takeoff.

(11) That 25% of the negligence causing the occurrence was attributable to Defendant Shawnee Airlines, Inc.

(12) That 75% of the negligence causing the occurrence was attributable to Defendant Metroflight, Inc.

(13) That on April 30, 1974, the pilot, Charles Sweeney knew, or should have known, that the aircraft in question could not be safely operated with the elevator and aileron controls locked.

In its judgment the *Wilcox* court denied Beech indemnity from Metro "because no liability or damages ... [were] assessed against Beech Aircraft Corporation...."

The summary judgment from which this appeal is taken involves the *Bonniwell* case. Beech moved for a summary judgment on Metro's cross-action against Beech and Beech's cross-action against Metro and Shawnee. The cross-plaintiffs in all of the cross-actions sought indemnity, or in the alternative, contribution over and against the cross-defendant(s). Beech's motion was grounded on the doctrine of res judicata. Beech asserted that the prior adjudication in the *Wilcox* case decided the issues in dispute in the *Bonniwell* case and, therefore, constituted a bar to the relitigation of those issues. Beech's motions were granted resulting in a take-nothing judgment against Metro and Shawnee on their cross-actions against Beech and a judgment in favor of Beech for complete indemnity over and against Metro.

The Bonniwells' standing to appeal this judgment arises from their stipulation that if the summary judgment is affirmed on appeal, they are bound by the settlement agreement they entered into with Metro.

That settlement agreement provides that as part of the consideration for the payment of the sum of $450,000, the wife and children of Charles E. Bonniwell, III, deceased, "... do hereby indemnify and hold harmless Metroflight, Inc., from any and all claims, demands, actions and causes of action of whatsoever nature or character, which have been or hereafter may be asserted by any person, firm or corporation who is or shall be named as a defendant by us in any lawsuit arising out of the above described accident...."

The effect of affirming the summary judgment in question is to virtually eliminate the Bonniwells' cause of action against Beech. This is because, even if Beech were found liable to the Bonniwells in a trial of their case against Beech, the summary judgment granting Beech complete indemnity over and against Metro would require Metro to pay those damages to the Bonniwells. They in turn have indemnified Metro pursuant to their settlement agreement. The Bonniwells' cause of action is thus destroyed because they would end up only where they started. However, the *effect* of affirmance on the Bonniwells is not the issue before this court and should not determine our decision. The Bonniwells entered into the agreement for a valuable consideration and their decision to so do was in no way influenced by any actions of Beech. Therefore, Beech's rights against Metro should not be compromised because of this settlement. What is at issue here is whether, as respects the horizonal relationship between Metro and Beech (as opposed to the vertical relationship between the Bonniwells and Beech), the *Wilcox* judgment adjudicating the rights of Beech on its cross-claim is res judicata of Beech and Metro's cross-claims in the *Bonniwell* case.

Appellants assert four main areas of complaint in their seven points of error. The first area (points of error one through four) concerns the trial court's alleged error in granting Beech's motion for summary judgment on the grounds of res judicata. The second area (point of error five) concerns the trial court's alleged error in holding

that Metro could not assert its claims for affirmative relief because they were barred by the applicable statute of limitations. Since Beech has conceded that the statute of limitations was not a bar to Metro's claims, while at the same time insisting that the claims were barred by the doctrine of res judicata, we will not directly address the statute of limitations point in our discussion. In their third complaint (point of error six), appellants assert that the trial court erred in not granting Metro affirmative relief for its losses because they were only economic and, therefore, could not be claimed under strict liability. Finally, in their seventh point of error, appellants complain of the trial court's alleged error in entering a judgment granting Beech indemnity over and against Metro. Because the indemnity question is interwoven with the res judicata question, we will consider appellants' points one through four and point seven together concluding with appellants' point of error six.

## RES JUDICATA

■ Appellants argue that res judicata is not applicable because in Beech's prayer for relief in *Wilcox*, it asked only to have judgment for indemnity or contribution if it were required by judgment to pay damages to plaintiffs. They argue that because the judgment denied Beech indemnity, there was no adjudication of Beech's right to indemnity or contribution. We disagree. Beech's prayer simply made a correct assessment of the law. Beech prayed for this relief because the law will allow a cross-plaintiff indemnity or contribution from a co-defendant only if the cross-plaintiff is found liable to the plaintiff. The wording of a prayer should not forclose a judgment in favor of the party making the prayer as long as the judgment is proper under the law and resolves the issues presented by the parties.

■ Appellants argue that because the *result* of the judgment in *Wilcox* was a *denial* of indemnity, this cannot be res judicata of a cause of action wherein indemnity is affirmatively sought and granted. How-

ever, in *Wilcox* Beech also sought affirmative relief. The conditional wording of the prayer and the judgment's denying relief is immaterial. Beech was not denied relief because it was found to be a greater tortfeasor. It was denied relief because the fact findings absolved Beech of any liability.

To hold as Metro urges would mean that Beech would be better off if it were negligent or had deliberately manufactured a defective product. If Beech had been found negligent and entitled to some indemnity or contribution from Metro and Shawnee, appellants could not assert that there had been no adjudication of Beech's right to indemnity or contribution. This is both illogical and contrary to the principles of justice.

■ Res judicata or the related doctrine of collateral estoppel does not go to what the judgment in the prior case *recites*; it goes to the facts and issues actually litigated. It operates only upon the facts and not upon the claims for recovery itself. *Rio Bravo Oil Co. v. Hebert*, 130 Tex. 1, 106 S.W.2d 242 (Tex.1937). The Texas Supreme Court has held that the rule of collateral estoppel "bars relitigation in a subsequent action upon a different cause of action of *fact issues* actually litigated and essential to a prior judgment." (emphasis added) *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361 (Tex.1971). Although appellants complain that the trial court erred in granting Beech's motion for summary judgment because genuine and material issues of fact were raised, they do not cite any such "issues of fact" remaining to be ligitated. This is because these issues of fact were already ligitated in the *Wilcox* trial.

The court in *Benson, supra*, pointed out that the doctrine of res judicata binds both parties to the litigation and those in privity with them. *Texas Water Rights Comm'n v. Crow Iron Works*, 582 S.W.2d 768 (Tex.1979); *Olivarez v. Broadway Hardware, Inc.*, 564 S.W.2d 195 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n. r. e.). In *Benson* the doctrine was not applied because no privity was found between the

parties. This case, relied on by appellants for their contention that res judicata does not apply, is, therefore, distinguishable from the instant case.

In *Benson* a collision occurred involving a tractor and trailer owned by Wanda Petroleum Company and an automobile owned by the Bensons but driven by Thurman C. Porter. Mrs. Benson and Porter sued Wanda for damages for personal injuries sustained. Before trial, Mrs. Benson took a voluntary nonsuit against Wanda. The jury found Wanda free of negligence and found Porter guilty of acts of negligence. Mrs. Benson thereafter filed suit in a different county against Wanda. The trial court granted Wanda's motion for summary judgment based on res judicata. The Court of Civil Appeals affirmed stating that because the Bensons and Porter were engaged in a joint enterprise, they were in privity. The Supreme Court reversed because it found that Mrs. Benson was not a party to the former action nor was she represented there on her claims against Wanda. The court held that since it was not shown that Mrs. Benson participated in or exercised any control over the trial in the Porter suit, no privity relationship existed which would support the application of the rules of res judicata.

In the present case, the privity question is not at issue. The cross-actions filed in *Wilcox* by Beech and Metro were identical to those filed by the same parties in *Bonniwell*. Metro, therefore, remained a party to the litigation although it was nonsuited by the original plaintiffs. In addition, Metro, unlike Mrs. Benson, had an opportunity to participate in the trial. As it was a cross-defendant in the *Wilcox* trial, Metro fully knew and understood the consequences of its being found negligent.

■ The policy behind res judicata is to protect a party from being sued twice for the same cause, and to promote judicial economy by precluding the relitigation of an issue when there has been a fair and proper trial. *Benson, supra; Abbott Laboratories v. Gravis,* 470 S.W.2d 639 (Tex.1971); *Olivarez v. Broadway Hardware, Inc.,* 564 S.W.2d 195 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

■ Appellants assert that because there is not a complete identity of parties in the *Bonniwell* and *Wilcox* cases, Beech is precluded from using the doctrine of collateral estoppel offensively. Although no Texas case has specifically held that the doctrine may be applied offensively, several courts have spoken to the issue of the requirement of mutuality in invoking the doctrine. The courts have abandoned the mutuality requirement, retaining the requirement of privity only as to the party against whom the plea of collateral estoppel is made in the second case. *Olivarez, supra; Windmill Dinner Theatre of Dallas v. Hagler,* 582 S.W.2d 585 (Tex.Civ.App.—Dallas 1979, writ dism'd); *Hardy v. Fleming,* 553 S.W.2d 790 (Tex.Civ.App.—El Paso 1977, writ ref'd n. r. e.). All that is necessary is that an essential issue of fact has been determined and adjudicated.

In *Olivarez* the plaintiff filed a diversity suit in federal court against the manufacturer of a pellet gun which had discharged and injured plaintiff's daughter. This suit resulted in a take-nothing judgment for the plaintiff. Plaintiff then sued the retailer in state court and the trial court granted the retailer's motion for summary judgment on the ground that the federal court's judgment was res judicata of the issues in the present suit. The court held that because the retailer was not a party to the prior action and did not participate in the defense of that action, the requirement of privity had not been met. However, the court held that the retailer was entitled to invoke the doctrine as to most of the issues already litigated because the federal action was submitted on a general verdict and not on special issues. This verdict necessarily encompassed a finding that plaintiff failed to establish one or more of the essential elements of her case. The court stated that no useful public policy would be served by permitting plaintiff to relitigate the identical issues. Thus plaintiff's suit was barred as to all issues except one not litigated in the prior action. A similar result was reached in *Seguros Tepeyac, S. A., Compa-*

nia Mexicana de Seguros Generales v. Jernigan, 410 F.2d 718 (5th Cir. 1969), where the court stated that an increasing number of courts have dispensed with the requirement of the identity of parties in situations where the party against whom the estoppel is applied has already had his "day in court."

In support of its contention that the offensive collateral estoppel sought to be used by Beech has not been approved in Texas, appellants cite Southern Pacific Transportation Co. v. Smith Material Corp., 616 F.2d 111 (5th Cir. 1980), where the court allowed the offensive use of collateral estoppel. Appellants assert that in Southern the court rejected the Texas law and applied the federal law. We disagree. Since federal procedure governed the action as to collateral estoppel, the court in Southern simply applied the federal law. In applying this law, the court cited Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), where it was held that the offensive use of collateral estoppel is approved provided the defendant received a full and fair opportunity to litigate, suffered no procedural disadvantages because of an opportunity unavailable in the prior litigation, and did not risk the possibility of inconsistent decisions. Although Parklane was a federal case grounded on a violation of the federal securities laws, it cannot be denied that the policies espoused in that case are identical to those espoused in recent Texas cases. See Windmill Dinner Theatre of Dallas v. Hagler, 582 S.W.2d 585 (Tex.Civ.App.—Dallas 1979, writ dism'd); Olivarez v. Broadway Hardware, Inc., 564 S.W.2d 195 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.); Hardy v. Fleming, 553 S.W.2d 790 (Tex.Civ.App.—El Paso 1977, writ ref'd n. r. e.); Mooney v. Fibreboard Corp., 485 F.Supp. 242 (E.D.Tex. 1980); Flatt v. Johns Manville Sales Corp., 488 F.Supp. 836 (E.D.Tex.1980).

Appellants assert that the jury findings in Wilcox were not essential to the judgment entered on behalf of the Wilcox plaintiffs. What appellants fail to realize is that the court in its judgment in Wilcox made a determination with respect to all issues and causes of action before it and not only the causes of action asserted by the Wilcox plaintiffs.

■ When a defendant in this state files a cross action against a co-defendant, the law treats him as a plaintiff, entitling him to plead his cause of action, put on evidence, and pray for judgment. Tex.R. Civ.P. 47. The fact findings that Beech was not negligent or strictly liable, that 25% of the negligence causing the occurrence was attributable to Defendant Shawnee, and 75% of the negligence was attributable to Defendant Metro were essential to the judgment denying Beech indemnity over and against Metro and Shawnee. These findings were relevant to the issue of liability. A judgment for indemnity or contribution necessarily requires a prior determination of liability issues. In a tort case where liability must be determined before damages can be resolved, contribution and indemnity are in the nature of damages. A claim for indemnity over and against a co-defendant is premature without a finding of liability. Therefore, these fact issues were essential for the adjudication of Beech's cross-actions against Metro and Shawnee.

■ Appellants claim that the prior judgment in Wilcox cannot be res judicata of Metro's claim for affirmative relief over and against Beech in Bonniwell so as to support a summary judgment in favor of Beech since it did not include any adjudication of Metro's cross-action for indemnity or contribution against Beech. It was Metro's decision in Wilcox to nonsuit Beech on its cross-action against Beech. Appellants now seek to exempt themselves from the effect of the rule providing that res judicata bars litigation of all issues connected with a cause of action which, with the use of diligence, might have been tried in a former trial. Texas Water Rights Comm'n v. Crow Iron Works, 582 S.W.2d 768 (Tex.1979); Abbott Laboratories v. Gravis, 470 S.W.2d 639 (Tex.1971); Ogletree v. Crates, 363 S.W.2d 431 (Tex.1963). In Chandler v. Cashway Building Materials, Inc., 584 S.W.2d 950

(Tex.Civ.App.—El Paso 1979, no writ), the court qualified the rule by stating: "... that rule applies to the cause of action which was actually filed by the plaintiff and not cross-actions which might have been filed by a defendant, unless, of course, the compulsory counterclaim rule is applicable." The court in *Chandler* then discussed *Griffin v. Holiday Inns of America*, 496 S.W.2d 535 (Tex.1973), wherein the Supreme Court held that the doctrine of res judicata barred the second suit because the compulsory counterclaim rule was applicable.

In *Griffin* a subcontractor sued a contractor on an express contract for labor and materials furnished. The contractor filed a counterclaim to recover damages for breach of contract alleging that the subcontractor had failed substantially to perform his obligations. That suit resulted in a take-nothing judgment against the subcontractor. The subcontractor then filed a suit against the same defendant in quantum meruit to recover the value of labor and materials furnished. The Supreme Court acknowledged that suits on an express contract and quantum meruit are generally considered two separate causes of action making inapplicable the doctrine of res judicata. However, there the situation was such that the subcontractor's claim in quantum meruit arose out of the occurrence that was the subject matter of the counterclaim. The issue of substantial performance was resolved against the subcontractor in the first suit. Therefore, the court held the doctrine applicable on the basis that the quantum meruit claim was a compulsory counterclaim to the contractor's counterclaim under Tex.R.Civ.P. 97.

The facts in *Chandler* do not fall within the compulsory counterclaim rule but within the qualification of the general rule of "a cross-action which might have been filed by a defendant." Beech has conceded that Metro's claim for indemnity in *Wilcox* was not a compulsory counterclaim under Rule 97. The rule of *Chandler* does not require us to find that Metro's cross-action against Beech was not one which could have been tried with the use of diligence. In *Chandler*

the first suit was for a debt. The second suit was for wrongful garnishment. Since this second suit arose out of a different transaction and the subject matter of the transaction was not litigated in the prior suit, the defendant was not required to join this second claim as a counterclaim in the first suit.

The facts in the case before us are distinguishable. The cross-action which might have been filed by Metro in *Wilcox* pertained to the same subject matter as Beech's cross-action against Metro. Both defendants were being sued by the *Wilcox* plaintiffs for damages sustained as a result of the plane crash. Beech's cross-action concerned whether Beech was entitled to indemnity or contribution. This is the same issue which would have been adjudicated if Metro had prosecuted its cross-action against Beech. *See Abbott Laboratories v. Gravis*, 470 S.W.2d 639 (Tex.1971). We, therefore, hold that Metro's cross-action, though not a compulsory counterclaim, was a permissive counterclaim which could have been tried in *Wilcox*.

 Finally, appellants argue that indemnity and contribution are not independent causes of action which can be summarily adjudicated by applying the doctrine of res judicata. They assert that the claims are ancillary to the plaintiffs' primary cause of action, and that because Beech had not been found liable to the *Bonniwell* plaintiffs, an adjudication as to indemnity over and against Metro is premature. We disagree. We interpret the statement that a cause of action for indemnity is derivative of the primary cause of action as being relevant only on the issue of whether the plaintiff has a cause of action against the party from whom indemnity is sought. *See Grove Mfg. Co. v. Cardinal Const. Co.*, 534 S.W.2d 153 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n. r. e.); *City of Houston v. Watson*, 376 S.W.2d 23 (Tex.Civ. App.—Houston 1964, writ ref'd n. r. e.).

In the case before us, it is undisputed that the Bonniwells had a cause of action against Metro. That cause of action was

settled prior to trial of this case. The relief sought by Beech in its cross-action for indemnity or contribution in *Wilcox* was identical to the relief it sought in *Bonniwell.* The *Wilcox* jury made certain fact findings which established the respective culpabilities of the defendants. As between Beech and Metro the facts findings in *Wilcox* provided the trial court rendering the summary judgment all the information it needed to adjudicate the cross-action for indemnity in *Bonniwell.* It is on this issue that we may distinguish *Lubbock Mfg. Co. v. Int'l Harvestor Co.,* 584 S.W.2d 908 (Tex.Civ. App.—Dallas 1979, no writ), a case relied on by appellants for the proposition that indemnity may not be granted a party until a judgment has been entered against it. In *Lubbock,* the court discusses the prerequisites that must be met to come within Tex. Rev.Civ.Stat.Ann. Art. 2212 (1971). There the relative culpabilities of all the defendants had not been litigated. In the case before us they have been litigated. International Harvester, the party for whom the summary judgment was sought, was not a party to the prior litigation as was Metro in the facts before us.

If the *Bonniwell* case were tried in an effort to determine the liability of Beech, the jury findings in *Wilcox* would still have to be analyzed to determine whether Beech is entitled to indemnity. This is because the causes of action for indemnity turn on the relative culpabilities of the parties involved in the cross-action, and these fact issues have already been decided as between all of the defendants. It should not matter that Beech could possibly be found liable to the Bonniwells. If this were material, litigation as between the same defendants would be endless and every case brought by a different plaintiff in a multiparty disaster and determined by a different jury could result in a different adjudication on the issue of indemnity. The policy of achieving judicial economy and preventing circuity of actions would hence be defeated. We find the doctrine of res judicata applicable in the present case.

## INDEMNITY

■ Appellants contend that the trial court erred in granting Beech indemnity over and against Metro because "such relief is no longer substantively available to a joint tortfeasor." In *B & B Auto Supply, Sand Pit, and Trucking Co. v. Central Freight Lines Inc.,* 603 S.W.2d 814 (Tex. 1980), the Supreme Court held that a common law right of indemnity does not exist between joint tortfeasors in negligence cases under Tex.Rev.Civ.Stat.Ann. Art. 2212a (Vernon Supp.1982), the Texas Comparative Negligence Act. In basing their seventh point on this ruling, appellants are assuming that the doctrine of res judicata is not applicable since they do not consider the possibility that Beech is not a tortfeasor. They are also looking at the award of indemnity only from a negligence standpoint since Art. 2212a concerns comparative negligence. Because of our above holding with respect to res judicata, we agree with appellee that neither Art. 2212 nor Art. 2212a is applicable in this case. Article 2212 is considered because it encompasses the tort of strict liability since the statute is not limited to negligence actions but applies to actions "based on tort . . . . " Both statutes concern only tortfeasors. Beech in *Wilcox* was not found to be a tortfeasor. For that reason appellants are correct in their assertions that this court will not need to decide whether a strictly liable party may be awarded indemnity from a negligent party, an issue not yet decided by our Supreme Court. See *General Motors Corp. v. Simmons,* 558 S.W.2d 855 (Tex.1977), wherein the court invites further legislative study of Articles 2212 and 2212a to solve this problem. We must determine whether, under any theory of indemnity, the trial court was correct in granting Beech indemnity over and against Metro.

Appellants rely on *Southern Pacific Transportation Co. v. Smith Material Corp.,* 616 F.2d 111 (5th Cir. 1980) for their contention that indemnity cannot be granted Beech because the duty Metro owed to the *Wilcox* plaintiffs "cannot be extrapolated into this dispute." In *Southern,* a passenger train (Amtrak) and a truck (Smith)

collided. Amtrak sued Smith for damages to its train and cars. Smith counterclaimed for damages to its truck. A jury apportioned fault finding Smith responsible for 75% of the negligence and Amtrak the remaining 25%. On Amtrak's motion, the trial court entered a declaratory judgment providing for contribution between Amtrak and Smith in accordance with the percentages for all other liabilities that the parties might incur to third parties. As to any subsequent litigation arising out of the occurrence in question, where Amtrak did not owe the plaintiff a high degree of care, Smith was barred from relitigating the existence or scope of Amtrak's negligence.

*Southern* may be distinguished from the facts at hand in several ways. First, the jury in *Wilcox* found Metro to be not only negligent but grossly negligent. Its actions were found to constitute 75% of the fault. These actions would have been the same whether Metro were charged with a high duty, ordinary duty, or slight duty of care. Second, the suit in *Southern* was not by a passenger. In *Wilcox* and *Bonniwell*, the suits were by passengers and the relative culpabilities of Metro and Beech have already been determined as to passengers. Generally, passengers in a plane are similarly situated and have no control over what transpires in the cockpit. They are all thus generally owed the same duty. The jury's findings of 75% negligence on the part of Metro could not have been altered by an instruction that Metro owed the passengers a higher duty of care. The standard of care is relevant in making the first determination of whether a party is negligent; i.e., whether the defendant has breached a duty it owes to the plaintiff. The percentages of negligence attributable to various defendants is relevant in determining their relative culpabilities and what percentage of the plaintiff's damages is to be paid by which defendants. Appellants' argument that there was no instruction as to the high duty owed to the *Wilcox* claimants does not strengthen their case because if the jury were so instructed, the negligence the jury may have found attributable to Metro may have been higher, not lower, than 75%.

This is because a party owing another party a high duty of care is liable for only slight negligence. Here, the jury found Metro liable for gross negligence. This is the degree of negligence needed for liability where the defendant is charged with only a slight duty of care.

Appellants contend that the trial court should not have granted Beech indemnity over and against Metro on Beech's motion for summary judgment because there was no adjudication of what "duty" Metro may have owed Beech. *Austin Road Co. v. Pope*, 147 Tex. 430, 216 S.W.2d 563 (1949). Appellants rely on *Austin* for the above proposition. There the court was dealing with joint tortfeasors under Art. 2212 and it is thus distinguishable. In a later case, the Supreme Court stated that although there are several approaches to the decision of indemnification, "it is perhaps not possible to state a single all inclusive one, since the variety of duties and situations is great." *General Motors Corp. v. Simmons*, 558 S.W.2d 855 (Tex.1977). The court in *Simmons* spoke of several different factors which would influence the award of indemnity other than a duty owed one tortfeasor to another. One was whether the negligent tortfeasor knew of the product defect caused by a strictly liable tortfeasor. In that same vein, the court found no reason why a manufacturer found strictly liable should be more culpable than the negligent tortfeasor. Another factor was whether some harm would independently result from the negligence.

Appellee argues that the court's decision in *Simmons* greatly influenced the special issues it submitted in *Wilcox* to support its claim for indemnity. These included issues inquiring as to the following: the ordinary and gross negligence of Metro, whether the pilot of the aircraft knew or should have known that the aircraft could not be safely operated with the elevator and aileron controls locked, and the comparative fault as between the defendants. We agree with appellee that, under the circumstances of this case, if the Bonniwell suit were to proceed to trial, the trial court would be

able to determine that as between Beech and Metro, Beech is entitled to full and complete indemnity over and against Metro. These issues were litigated and the findings resulted in a total absolving of liability on the part of Beech.

We are not ignoring the plain language of the definition given by the Supreme Court in *Simmons*: "Indemnity has been defined as 'the payment of all of plaintiff's damage by one tortfeasor to another tortfeasor who has paid it to the plaintiff.'" We do not here have a situation wherein Beech has already paid any damages to the Bonniwells and it is now seeking indemnity from Metro for that payment. This is because the award of indemnity was granted by the summary judgment before a trial on the merits. However, this case is unusual because of the application of the doctrine of res judicata. In order to adhere to the policy of judicial economy, the trial court summarily granted Beech indemnity over Metro as between those two parties because all of the relevant issues as to liability had already been adjudicated in *Wilcox*. All the trial court did then was essentially grant Beech indemnity over and against Metro *if* and *when* Beech is required to pay damages to the Bonniwells. Under these unique circumstances, the Bonniwells have stipulated that they are bound by this court's decision on appeal as to the correctness of the trial court's granting the summary judgment. However, if they had not entered into this settlement agreement with Metro, their cause of action against Beech could have resulted in an award of damages in their favor if they could prove Beech either negligent or strictly liable. As Metro was an original defendant in their lawsuit, the adjudication of indemnity would not have affected them. For that reason and because the fact issues were already litigated as between Beech and Metro, the trial court chose to grant Beech indemnity over and against Metro based on the *Wilcox* findings prior to the trial of the Bonniwell case. We, therefore, hold that the trial court's actions were proper.

## RESTATEMENT (SECOND) of TORTS § 402A

■ Appellants' sixth point of error alleges that the trial court erred in denying Metro any affirmative relief for its losses. Because those losses were economic only, they could not be claimed under strict liability. In point is *General Motors Co. v. Simmons, supra.* There, the plaintiff Simmons was blinded by the shattering of the glass of the General Motors vehicle owned by Feld Truck Leasing Corporation and driven by Johnston. Simmons had settled with Feld and Johnston and was now appealing the Court of Civil Appeals' reformation of the $1,000,000 judgment rendered in his favor against General Motors and the trial court's failure to grant indemnity to Feld and Johnston over and against General Motors. The court denied Feld indemnity because Feld's damages against General Motors could be only for the liability Feld incurred by reason of Simmons' injuries. The court grounded its decision upon Section 402A of the Restatement (Second) of Torts which provides in part as follows:

402A SPECIAL LIABILITY OF SELLER OF PRODUCT FOR PHYSICAL HARM

TO USER OR CONSUMER

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability *for physical harm thereby caused* to the ultimate user or consumer or to his property, . . . (emphasis added)

RESTATEMENT (SECOND) of TORTS § 402A (1966).

Feld and Johnston in *Simmons* made no claim that they suffered physical harm. Neither did Metro in the case before us. The court concluded, "[T]o extend the duty to include *liability* to others would mean that in all cases the seller or manufacturer is subjected to indemnity without regard to the independent torts of others." (Citing authority) 558 S.W.2d at 860. See *Foster v. Ford Motor Co.*, 616 F.2d 1304 (5th Cir. 1980), wherein the court held that a suit for indemnity must be based on injuries to the person or property of the party seeking

indemnity and must not be based on payment of a judgment, and Sales, *Contribution and Indemnity Between Negligent and Strictly Liable Tortfeasors*, 12 ST. MARY'S L.J. 323 (1980). In the case before us, Metro's damage against Beech was like Feld's as against General Motors. It was only for the possible economic loss Metro may have sustained if it had to pay a judgment to the Bonniwells. The loss was not for any physical harm to Metro caused by Beech for any alleged defect in the product.

We affirm the judgment of the trial court.

Affirmed.